# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOHN J. O'CONNOR and<br>KATHERINE P. O'CONNOR,<br>    Plaintiffs<br><br>v.<br><br>NANTUCKET BANK, a Division of<br>SOVEREIGN BANK, N.A., STEPHEN<br>P. HAYES, HAYES & HAYES,<br>ATTORNEYS AT LAW, PC,<br>    Defendants. | Docket No. 1:13-cv-11350-PBS |

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

The defendants in the above-captioned action hereby move to dismiss the plaintiffs'

Complaint on the ground that the Complaint fails to state a claim upon which relief can be

granted. The plaintiffs' Complaint contains three counts. Count One alleges that all three

defendants violated the Fair Debt Collection Practices Act ("FDCPA") and the Massachusetts

Fair Debt Collection Practices Act ("MFDCPA"). Count Two alleges that all three defendants

violated M.G.L. c. 93A, § 9. Count Two's allegations are premised entirely on the defendants'

alleged violations of the FDCPA and the MFDCPA. Count Three alleges that Nantucket Bank

violated the Real Estate Settlement Procedures Act ("RESPA") by failing to properly respond to

the plaintiffs' purported qualified written request. The facts support none of those claims. The

Court must therefore dismiss the Complaint against all defendants.

## I. FACTS

The facts alleged in the Complaint are straightforward and generally revolve around a

series of letters the parties exchanged between October, 2011 and May, 2012. The plaintiffs are

the former owners and mortgagors of 10 Austin Farm Road, Nantucket, Massachusetts (the "Property").

On or about October 7, 2011, plaintiffs' counsel sent a twenty-one-page letter to Nantucket Bank (the "October 7, 2011 Letter"). Compl. ¶ 16[1]; Tanner-Butler Decl. Ex. 1. The October 7, 2011 Letter purports to be a so-called "qualified written request" under RESPA. Compl. ¶ 16. It contains one-hundred-seventy-nine requests for information, most of which bear little or no connection to the plaintiffs' mortgage. See Tanner-Butler Decl. Ex. 1.

Nantucket Bank acknowledged receipt of the October 7, 2011 Letter on November 1, 2011. Tanner-Butler Decl. Ex. 2. Nantucket Bank substantively responded to the October 7, 2011 Letter on December 27, 2011 (the "December 27, 2011 Letter"). Compl. ¶ 21; Tanner-Butler Decl. Ex. 3. The December 27, 2011 Letter provided some basic information regarding RESPA and indicated that Nantucket Bank would treat the October 7, 2011 letter as a qualified written request under RESPA only to the extent that it sought information regarding the servicing of the plaintiffs' mortgage. Id. To answer the plaintiffs' servicing-related questions, the December 27, 2011 Letter enclosed (1) a payment history; (2) copies of the plaintiffs' note; (3) copies of the plaintiffs' mortgage and assignments; and (4) the most recent appraisal of the Property. Compl. ¶¶ 26-29; Tanner-Butler Decl. Ex. 3, at 2.

On April 9, 2012, Nantucket Bank sold the Property at a non-judicial foreclosure sale conducted by Stephen P. Hayes ("Attorney Hayes") and Hayes & Hayes, Attorneys at Law, P.C. ("Hayes & Hayes"). Compl. ¶ 32. On April 13, 2012, Attorney Hayes sent the plaintiffs a Notice to Vacate. Compl. ¶ 33. The Notice to Vacate informed the plaintiffs that Sovereign

---

[1] Undersigned counsel has not yet received a certified copy of the state court record from the Nantucket Superior Court. All references to the Complaint are therefore to the copy that was served on Nantucket Bank, ECF No. 1-1 at 6-31, and use the Complaint's own page numbers.

Bank, N.A. owned the Property pursuant to the foreclosure sale. <u>See</u> Hayes Decl. Ex. 4 at 1. It also informed the plaintiffs that under Massachusetts law, Sovereign Bank, N.A. had the exclusive right to use and possess the Property. <u>Id.</u> It requested that the plaintiffs quit the Property within 30 days and indicated that if the plaintiffs refused to quit by May 1, 2012, they would be "liable for use and occupation at $200 per day from May 1, 2012." <u>Id.</u>

On May 17, 2012, the plaintiffs sent a purported Chapter 93A demand letter to Attorney Hayes and Hayes & Hayes. Compl. ¶ 55; Hayes Decl. Ex. 5. They do not allege that they ever sent a demand letter to Nantucket Bank. <u>See generally</u> Compl. Their purported Chapter 93A demand letter makes conclusory allegations that the foreclosure sale of the Property did not comply with Massachusetts law. Hayes Decl. Ex. 5. It then claims that the Notice to Vacate technically violated various regulations promulgated by the Massachusetts Attorney General regarding debt collection. <u>See id.</u> at 2. For the alleged violations, the purported Chapter 93A demand letter demands $46,500 in damages and $1,000 in attorney's fees. <u>Id.</u>

Since the defendants did nothing wrong, the Complaint fails to state a claim upon which relief can be granted and should be dismissed.

## II. ARGUMENT

### A. Motion to Dismiss Standard.

The Court may grant a motion to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 663 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). The Rule 8 pleading standard "demands more than an unadorned,

the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555). "The make-or-break standard . . . is that the combined allegations, taken as true, must state a plausible, not a merely conceivable, case for relief." Rodriguez-Ramos v. Hernandez-Gregorat, 685 F.3d 34, 40 (1st Cir. 2012) (quoting Sepúlveda–Villarini v. Dep't of Educ. of P.R., 628 F.3d 25, 29 (1st Cir. 2010)).

The Court's task in deciding a motion to dismiss takes two steps: "an inquiring court first must separate wheat from chaff; that is, the court must separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." Morales-Cruz v. Univ. of Puerto Rico, 676 F.3d 220, 224 (1st Cir. 2012). The Second, the Court "must determine whether the 'factual content . . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Morales-Cruz, 676 F.3d at 224 (quoting Iqbal, 556 U.S. at 663).

**B.     Scope of the Record.**

The Complaint's allegations are based, almost entirely, on the contents of various letters between the parties. Count One is entirely premised on one sentence in the April 13, 2012 Notice to Quit. Count Three is premised on the plaintiffs' October 7, 2011 Letter and alleged deficiencies in Nantucket Bank's December 27, 2011 response. Those letters are extensively referred to in the Complaint but, for reasons that are unclear to the defendants, the plaintiffs do not attach copies of the letters to their Complaint.

The Court may consider the letters in deciding the defendants' Motion to Dismiss. Ordinarily, a court may not consider any documents that are outside of the complaint unless the motion is converted into one for summary judgment. There is, however, a narrow exception "for

documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint." Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001) (quoting Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993)). "When the complaint relies upon a document, whose authenticity is not challenged, such a document 'merges into the pleadings' and the court may properly consider it under a Rule 12(b)(6) motion to dismiss." Id. (quoting Beddall v. State St. Bank & Trust Co., 137 F.3d 12, 17 (1st Cir. 1998)). "'[W]hen . . . a complaint's factual allegations are expressly linked to—and admittedly dependent upon—a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6).'" Trans-Spec Truck Serv., Inc. v. Caterpillar Inc., 524 F.3d 315, 321 (1st Cir. 2008) (quoting id.).

In this case, the Complaint's claims are entirely reliant on the contents of the various letters to which it refers. Those letters therefore "merge" into the pleadings and are properly a part of the Court's record in deciding the defendants' Motion to Dismiss. See Id. The Court should therefore consider the letters, true copies of which are attached to the Hayes Declaration and the Tanner-Butler Declaration, in deciding the defendants' Motion to Dismiss.

**C.     The Defendants Did Not Violate the FDCPA or the MFDCPA.**

Count I of the Complaint fails because none of the defendants violated either the FDCPA or the MFDCPA. "In order to prevail on an FDCPA claim, plaintiff must prove that (1) she was the object of collection activity arising from consumer debt, (2) defendants are debt collectors as defined by the FDCPA, and (3) defendants have engaged in an act or omission prohibited by the FDCPA." Som v. Daniels Law Offices, P.C., 573 F. Supp. 2d 349, 356 (D. Mass. 2008). Here,

the Complaint fails to adequately plead even the first element, so the plaintiffs' claims against all defendants fail as a matter of law.

The definition of "debt" in both the MFDCPA and the FDCPA does not include future debts. Here, the plaintiffs mischaracterize the statement in the Notice to Vacate regarding a potential $200-per-day use and occupancy judgment as a "debt," even though that amount was not alleged to be due at the time Attorney Hayes sent the April 13, 2012 Notice to Vacate.

1. *An Anticipated Use and Occupancy Judgment is Not a "Debt" Under the FDCPA.*

The Notice to Vacate could not violate the FDCPA because its reference to a $200 "use and occupation" amount is not an attempt to collect a debt as defined by FDCPA. The FDCPA defines "debt" as: "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5).

"[B]ecause not all obligations to pay are considered 'debts' under the Act, the definition of 'debt' thus serves to limit the scope of the FDCPA." Berman v. GC Servs. Ltd. P'ship, 146 F.3d 482, 484 (7th Cir. 1998) (quoting Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C., 111 F.3d 1322, 1324 (7th Cir. 1997)). Determining whether an obligation is a "debt" under the FDCPA requires a two-step inquiry: "First, the court must ask whether there is an obligation to pay money arising out of a consensual transaction. If so, the court must determine whether 'money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes.'" Kreisler v. Latino Union, Inc., No. 06 CV 3968, 2007 WL 1118408, at *4 (N.D. Ill. Apr. 12, 2007) (citation omitted) (quoting Bass, 111 F.3d at 1326).

The $200 per day "use and occupation" fee on which the Complaint focuses is not a "debt" under the FDCPA because it did not arise out of a consensual transaction. See Kreisler, 2007 WL 1118408, at *4. Rather, the Notice to Vacate correctly informs the plaintiffs, who were at that time holdover tenants, that if the defendant was forced to initiate a legal proceeding against them to recover possession of the Property, then it would seek to recover a judgment for use and occupancy. It is inaccurate to suggest that the defendants were demanding payment of that amount.

The plaintiff's allegations here are factually similar to the facts of Baer v. Harmon Law Offices, P.C., No. 3:08-30063-MAP, 2009 WL 102698, at *1 (D. Mass. Jan. 14, 2009). In Baer, the plaintiffs sued Harmon Law Offices, P.C. under the FDCPA over a similar warning in a notice to quit. The putative class in that case consisted of tenants who received a notice to quit after their landlord's property had been foreclosed and purchased by the foreclosing entity. Id. Judge Ponsor roundly rejected the plaintiffs' argument that a notice to quit, which made the same warning as in this case, was a "debt" under the FDCPA. The court ruled that "[t]he reference to potential damages that Defendant might seek on behalf of its client if it was required to go to court to obtain an involuntary eviction cannot be twisted into a demand for payment of a 'debt.'" Id. The court explained that the notice to quit in that case (1) made no reference to a preexisting debt, (2) sought only use and occupancy, not past-due rent, and (3) actually helped the lessor avoid paying a use and occupancy judgment by warning her of that potential. Id.

In this case, the Court should rule that the Notice to Vacate was not an attempt to collect a debt for the same reasons. The Notice to Vacate made no reference to any preexisting debt by the plaintiffs. It referred only to potential use and occupancy. It could have actually *helped* the

plaintiffs avoid paying a use and occupancy judgment if they voluntarily vacated the Property. It was therefore not an attempt to collect a "debt" under the FDCPA. The plaintiffs would be liable for use and occupancy because of their refusal to quit the Property, not because of any consensual transaction into which they entered. See M.G.L. c. 239, § 3.

      *2.*      *An Anticipated Use and Occupancy Judgment is Not a "Debt" Under the MFDCPA.*

The Notice to Vacate was not an attempt to collect a "debt" as defined by the MFDCPA because the MFDCPA's definition of "debt" is even narrower than the FDCPA definition. Under the MFDCPA, a "debt" is defined as:

> money or its equivalent which is, or is alleged to be, more than 30 days past due and owing, unless a different period is agreed to by the debtor, under a single account as a result of a purchase, lease, or loan of goods, services, or real or personal property, for personal, family or household purposes or as a result of a loan of money which is obtained for personal, family or household purposes whether or not the obligation has been reduced to judgment.

940 CMR 7.03. A "debt" under the MFDCPA, therefore, must arise out of a purchase, lease, or loan. See Albright v. Trustees of Villa Grande Condo., 2001 Mass. App. Div. 88 (2001). A condo fee assessment, for example, is not considered a "debt" under the MFDCPA. Id. Moreover, for an obligation to fall under the MFDCPA definition of a "debt," it must also be "more than 30 days past due and owing." 940 CMR 7.03. An anticipated judgment could not fall within that definition because it is not alleged to be due and owing—it does not even exist.

The reference in the Notice to Vacate to an anticipated use and occupancy judgment against the plaintiffs was not an attempt to collect a "debt" within the definition of the MFDCPA.[2] The anticipated use and occupancy judgment referred to in the Notice to Vacate did

---

[2] An attempt to characterize the Notice to Vacate as an attempt to collect on the original mortgage debt under the MFDCPA would be unavailing. The MFDCPA restrains the collection activities of "creditors," and the MFDCPA

not arise out of a purchase, lease, or loan. It arose because of the plaintiffs' refusal to quit the Property. Moreover, the anticipated judgment was just that—anticipated. It was not, and was not alleged to be, more than 30 days past due and owning. It therefore did not meet the definition of "debt" under the MFDCPA.

**D.      Nantucket Bank Cannot be Held Vicariously Liable For Its Attorney's Debt Collection Activities.**

The plaintiffs' claims against Nantucket Bank fail for the additional reason that the Complaint fails to plead facts demonstrating that Nantucket Bank is vicariously liable for the actions of its attorneys under either the FDCPA or the MFDCPA. Vicarious creditor liability is not available under the FDCPA. Even if it were, however, the Complaint fails to allege sufficient facts to demonstrate Nantucket Bank's vicarious liability for the actions of its independent contractors.

  1.      *Nantucket Bank Cannot be Held Liable for the Actions of its Attorneys Under the FDCPA.*

The Court should dismiss the FDCPA claim against Nantucket Bank for the additional reason that it is not a "debt collector" and cannot be held liable for the actions of its debt collectors under the FDCPA. It is well-settled law that the FDCPA applies only to debt collectors, not to creditors. See Perry v. Stewart Title Co., 756 F.2d 1197, 1208 (5th Cir. 1985). "The legislative history of section 1692a(6) indicates conclusively that a debt collector does not include the consumer's creditors, a mortgage servicing company, or an assignee of a debt, as

---

definition of "creditor" excludes a creditor's "activities [which] are solely for the purpose of repossessing any collateral or property of the creditor securing such a debt." Conrad v. Fed. Home Loan Mortgage Corp., No. BACV2011-00653, 2012 WL 2335271, at *5 (Mass. Super. Apr. 24, 2012) (quoting 940 CMR 7.03). In this case, there can be no dispute that the Notice to Quit came as part of repossessing collateral securing the mortgage debt.

long as the debt was not in default at the time it was assigned.  See S.Rep. No. 95–382, 95th

Cong., 1st Sess. 3, reprinted in 1977 U.S. Code Cong. & Ad. News 1695, 1698." Id.  The

FDCPA therefore does not impose vicarious liability on creditors if their debt collectors violate

the act.  See Wadlington v. Credit Acceptance Corp., 76 F.3d 103, 108 (6th Cir. 1996) (holding

that vicarious liability for creditor based on debt collector's actions would run afoul of

Congress's intent).

In this case, the Complaint alleges no facts related to the debt collection activities of

Nantucket Bank.  The only debt collection allegations are based on the actions of Attorney.

Hayes and Hayes & Hayes.  As discussed elsewhere in this Memorandum, Attorney Hayes's

actions did not violate the FDCPA.  But even if they did, any liability under the FDCPA could

not be imputed to Nantucket Bank because it is not a "debt collector" as defined by Section

1692a.  The Court should therefore dismiss the FDCPA claims against Nantucket Bank.

2.      *The Complaint Fails to Allege Sufficient Facts to Hold Nantucket Bank Liable for Its Debt Collector's Actions Under the MFDCPA.*

The Court should also dismiss the FDCPA and MFDCPA claims against Nantucket Bank

because the Complaint fails to allege sufficient facts to demonstrate that Nantucket Bank is

vicariously liable for the actions of its foreclosure/eviction counsel.  The Complaint does not

allege that Attorney Hayes is an employee of Nantucket Bank.  See generally Compl.  Indeed,

the Complaint alleges that "Hayes is a shareholder of Hayes & Hayes."  Compl. ¶ 4.  Hayes &

Hayes is an independent contractor of Nantucket Bank.

"Generally speaking, the employer of an independent contractor is not liable for harm

caused to another by the independent contractor's negligence, except where the employer

retained some control over the manner in which the work was performed."  Herbert A. Sullivan,

Inc. v. Utica Mut. Ins. Co., 439 Mass. 387, 407 (2003) (citing Lyon v. Morphew, 424 Mass. 828, 834 (1997)).  In order to establish liability on the part of the employer of an independent contractor, the plaintiff must show "such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way."  Id. (quoting Restatement (Second) of Torts § 414 comment (c) (1965)).

Here, the Complaint is completely devoid of any factual allegation that Nantucket Bank exerted any control over the actions of Attorney Hayes or Hayes & Hayes.  See generally Compl. The Complaint merely groups Nantucket Bank together with Attorney Hayes in a conclusory allegation that "Sovereign,[3] and/or Nantucket Bank is/are a 'creditor' as that term is defined under the FDCPA, MFDCPA and 940 CMR 7.00."  See Compl. ¶ 67.  That allegation is insufficient to meet the Iqbal factual pleading standard and therefore does not support an inference that Nantucket Bank exercised sufficient control over Attorney Hayes's actions to make it liable.  The Court should therefore dismiss the MFDCPA claims against Nantucket Bank.

**D.      Nantucket Bank Did Not Violate RESPA.**

Count Three of the Complaint alleges that Nantucket Bank violated RESPA by failing to respond to the plaintiffs' October 7, 2011 Letter.[4]  That Count fails to plead sufficient facts to state a claim.  The October 7, 2011 Letter was not a qualified written request under RESPA.  It was an overbroad, intentionally burdensome list of one-hundred-seventy-nine discovery requests,

---

[3] Sovereign Bank, N.A. is not a named defendant.

[4] Count Three is only asserted against Nantucket Bank, not against Attorney Hayes or Hayes & Hayes.  See Compl. ¶¶ 92-101.  RESPA only requires mortgage servicers, as defined by the act, to respond to borrower inquiries.  Since neither Attorney Hayes, nor Hayes & Hayes is a mortgage servicer as defined by RESPA, they would have no obligation under RESPA to respond to qualified written requests regarding the servicing of a mortgage loan. Moreover, the Complaint does not allege that the plaintiffs sent a qualified written request to either Attorney Hayes or Hayes & Hayes.  See generally, Compl.

including forty requests for production of documents and one-hundred-thirty-nine interrogatories. Most of the requests bear little or no apparent connection to the plaintiffs or their mortgage loan. Nantucket Bank therefore had no obligation to respond under RESPA, but it did respond on December 27, 2011. The plaintiffs' claim under RESPA therefore fails as a matter of law, and the Court should dismiss it.

1.    *The October 7, 2011 Letter Was Not a Qualified Written Request.*

RESPA requires servicers of certain mortgage loans to respond to certain borrower inquiries, which the statute terms "qualified written requests." <u>See</u> 12 U.S.C. § 2605(e). A qualified written request is defined under RESPA as

> a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that--(i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

12 U.S.C. § 2605(e)(1)(B). The definition is further restricted by Section 2605(e)(1)(A), which provides that a mortgage servicer only has a duty to respond to requests "for information relating to the servicing of such loan." 12 U.S.C. § 2605(e)(1)(A). That section limits the duty of mortgage servicers because "servicing" is defined by RESPA as:

> receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts described in section 2609 of this title, and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan.

12 U.S.C. § 2605(i)(3).

Courts have therefore considered a mortgage servicer's duty to respond to borrower inquiries under RESPA to be narrow, and have upheld a servicer's right to ignore overbroad

requests for documents and information.  See, e.g., Sovereign Bank v. Sturgis, 863 F. Supp. 2d 75, 104 (D. Mass. 2012) (holding that request for securitization documents not within the definition of a qualified written request under RESPA); Ward v. Sec. Atl. Mortgage Elec. Registration Sys., Inc., 858 F. Supp. 2d 561, 574 (E.D.N.C. 2012), appeal dismissed (May 30, 2012) (holding that letter challenging validity of mortgage loan was not a qualified written request because it did not relate to servicing as defined by RESPA); Armeni v. Am.'s Wholesale Lender, No. CV 11-8537 CAS AGRX, 2012 WL 603242, at *5 (C.D. Cal. Feb. 24, 2012) ("Under RESPA, a servicer need not respond to an unreasonable request for information unless the plaintiff justifies his or her belief that the account is in error."); Kelly v. Fairon & Associates, 842 F. Supp. 2d 1157, 1161 (D. Minn. 2012) (holding that servicer had no duty to respond to requests for identity of the note holder or master servicer); Bhatti v. Guild Mortgage Co., No. C11-0480JLR, 2011 WL 6300229, at *7 (W.D. Wash. Dec. 16, 2011) (holding that letter demanding "anything and everything" related to loan was not a qualified written request).

        For example, in Menashe v. Bank of New York, the United States District Court for the District of Hawaii ruled that a letter that contained broad requests for nineteen categories of documents was "more akin to a clearly over-broad discovery request than a good-faith QWR" and did not trigger a servicer's duty to respond.  850 F. Supp. 2d 1120, 1131 (D. Haw. 2012). That court went on to rule:  "To the extent Plaintiff suggests that RESPA allows a borrower to request, and forces a servicer to provide, any and all documents vaguely relating to servicing of the loan, the court rejects such proposition."  Id.

        Similarly, in Junod v. Dream House Mortgage Co., the Untied States District Court for the Central District of California examined a purported qualified written request that sought

eleven broad categories of documents and ruled that such "all encompassing request[s] for documents and records are not the type of information RESPA contemplates." No. CV 11-7035-ODW VBKX, 2012 WL 94355, at *3-*4 (C.D. Cal. Jan. 5, 2012); see also Derusseau v. Bank of Am., N.A., No. 11 CV 1766 MMA JMA, 2011 WL 5975821, at *4 (S.D. Cal. Nov. 29, 2011) (examining a similar letter and ruling: "Such broad requests for information related generally to Plaintiff's loan are not covered by [RESPA].").

Nantucket Bank had no duty to respond to the plaintiffs' October 7, 2011 Letter because it was not a qualified written request. It was even more egregious, broad, and burdensome than the letters rejected in Menashe and Junod. Like the letters considered in Menashe and Junod, the October 7, 2011 Letter contains a laundry list of, essentially, discovery requests. See Tanner-Butler Decl. Ex. 1. The plaintiffs' letter contains one hundred-eighty such requests. Id. If the nineteen document requests examined in Junod were "clearly over-broad," then the one-hundred-eighty in this case must be as well. The letter contains no clue as to what the plaintiffs' believe to be in error on their mortgage loan account. See id. Nantucket Bank therefore had no duty to respond to the October 7, 2011 Letter under RESPA. See Armeni, 2012 WL 603242, at *5.

Moreover, the specific requests that the plaintiffs allege Nantucket Bank failed to respond to are not related to "servicing" as defined by RESPA. The various questions quoted by the plaintiffs in the Complaint over the eleven pages from pages 4 to 15 bear no relation to the servicer's collection of principal, interest, and escrow payments from the plaintiffs and forwarding those payments to the owner of the plaintiffs' loan.

For example, the very first quoted request asks "Please identify each account accounting and servicing system used by your company and any servicers and/or sub-servicers or previous

servicers and/or sub-servicers from the inception of this account to the present date so that our audit and forensic experts can decipher the data provided." Compl. ¶ 22(I)(1). The requests become increasingly irrelevant and bizarre from there:[5]

- "Has any previous servicers [sic] or sub-servicers of this mortgage reported the collection of late fees on this account as interest in any statement to our client(s) or to the IRS?" Compl. ¶ 22(VII)(2).
- "Please explain how property inspections are beneficial to our client(s)." Compl. ¶ 22(VIII)(8).
- "Did the originator or previous servicers of this account have any financing agreements or contracts with your company or an affiliate of your company." Compl. ¶ 22(XI)(2).
- "If applicable, please identify all person(s) by name, address and phone number, who approved the foreclosure of our client(s)' property." Compl. ¶ 22(XI)(24).

Those requests are entirely unrelated to "servicing" as defined by RESPA. They are therefore inappropriate subjects of inquiry in a qualified written request, and Nantucket Bank had no legal duty to respond to them. See Junod, 2011 WL 5975821, at *4 (rejecting plaintiff's claim that requests for "Transaction Codes" were within the RESPA definition of "servicing").

---

[5]     The October 7, 2011 Letter, drafted and signed by a Massachusetts attorney and an officer of this Court, contains a plethora of outright misrepresentations regarding the scope of RESPA. For example, it claims:

> Your company . . . when offering a certified rebuttal to this RESPA REQUEST (sic), must do so in accordance and compliance with current statutes and/or laws by signing same as a fully liable man or woman under penalty of perjury while offering direct testimony in the official capacity as appointed agent for your company and in accordance with your company's Articles of Incorporation and By Laws (sic) signed by a current and duly sown director(s) of such corporation/Holding Corporation/National Association.

Tanner-Butler Decl. Ex. 1, at 19-20. This is entirely false. RESPA contains absolutely no requirement that a mortgage servicer respond with sworn testimony, or that the response come from a director of the corporation. See 12 U.S.C. § 2605(e). The October 7, 2011 Letter goes on to claim "When and if your company fails to timely rebut any part of this RESPA REQUEST (sic), your company hereby agrees to grant unto our client(s) an unlimited Power of Attorney and full authorization to sign and endorse your company's name upon any agreement arising therefrom." Tanner-Butler Decl. Ex. 1, at 20. Again this is false. Neither RESPA nor Massachusetts state law allows for such a bizarre grant of a power of attorney by silence. See 12 U.S.C. § 2605(e). The October 7, 2011 Letter also claims that "You are required to acknowledge receipt of this letter **within five (5) days** and RESPA and TILA provide for substantial penalties and fines for non-compliance or failure to answer the question set forth in this letter **within thirty (30) days** from receipt hereof." Tanner-Butler Decl. Ex. 1, at 3 (emphasis in original). Again, this is false. As noted in footnote 6, below, the times provided by RESPA to acknowledge and respond to a qualified written request on October 7, 2011 were 10 and 60 *business* days, respectively.
    The October 7, 2011 Letter therefore violates the Massachusetts Rules of Professional Conduct at least by making false statements of law to an unrepresented third person. See Mass. R. Prof. Conduct 4.1(a).

15

Since Nantucket Bank had no duty to respond to those requests under RESPA, it cannot be liable to the plaintiffs for its failure to respond. The Court should therefore dismiss Count Three of the Complaint.

        2.     *Nantucket Bank's Response to the October 7, 2011 Letter Discharged Any Duty It Owed the Plaintiffs Under RESPA.*

Moreover, the Court must dismiss the RESPA claim against Nantucket Bank because Nantucket Bank properly responded to the October 7, 2011 Letter under RESPA.

When a borrower sends a servicer a proper qualified written request, the servicer must first acknowledge receipt of the qualified written request and then respond. 12 U.S.C. § 2605(e)(2). That response must include one of the following actions by the mortgage servicer: (1) a correction of the reason the borrower's account is in error and a notification to the borrower of the correction, 12 U.S.C. § 2605(e)(2)(A); (2) an investigation revealing that the account is correct and a written explanation to the borrower of the reason that the account appears to be correct, 12 U.S.C. § 2605(e)(2)(B); or (3) the provision of information requested by the borrower or an explanation of why the requested information will not be made available to the borrower, 12 U.S.C. § 2605(e)(2)(C). The servicer's response must come within 60 business days of its receipt of the qualified written request.[6]

Though it had no obligation to acknowledge the October 7, 2011 because it was not a qualified written request, Nantucket Bank did acknowledge receipt of the October 7, 2011 Letter on November 1, 2011. Tanner-Butler Decl. Ex. 2. It then responded to the October 7, 2011

---

[6] The Dodd-Frank Wall Street Reform and Consumer Protection Act shortened the amount of time given to mortgage servicers to respond to borrower inquiries from 60 business days to 30 business days. See Pub. L. No. 111-203, § 1463(c), 124 Stat. 1376 (2010). That change took effect on January 21, 2013. See id. at § 1400(c)(3). The change was not given retroactive effect, so the time to respond to a qualified written request at the time Nantucket Bank received the October 7, 2011 Letter was 60 business days.

Letter on December 27, 2011.  <u>See</u> Compl. ¶ 23; Tanner-Butler Decl. Ex. 3.  That response

attached a copy of the Note and Mortgage.  Compl. ¶ 26.  It attached a copy of the plaintiffs'

loan history.  Compl. ¶ 27.  It attached copies of loan modification documents the plaintiffs

executed.  Compl. ¶ 28.  It also attached a copy of a September 5, 2011 appraisal of the Property.

Compl. ¶ 29.  The December 27, 2011 Letter outlined, in general terms, Nantucket Bank's duty

to respond only to questions related to "servicing" as defined by RESPA.  Tanner-Butler Decl.

Ex. 3.  The letter informed the plaintiffs that Nantucket Bank would not respond to the non-

servicing-related portions of the October 7, 2011 Letter, nor to the requests for information that

were overbroad, vague, onerous, and burdensome.  <u>See</u> <u>id.</u>  The response closed by saying "With

regard to your specific requests that pertain to the servicing of your loan, we believe that the

following information will provide you with the information that you are seeking," and listed the

four enclosures identified above.

That December 27, 2011 response by Nantucket Bank satisfied Nantucket Bank's

obligation to respond to the October 7, 2011 Letter.  The response came within the statutory time

frame.  <u>See</u> 12 U.S.C. § 2605(e)(2).  It provided information requested by the plaintiffs in the

form of the attachments.  <u>See</u> 12 U.S.C. § 2605(e)(2)(C)(i).  To the extent that the information it

did provide did not answer the plaintiffs' questions, it explained why additional information was

not being provided.  <u>See</u> <u>id.</u>  Finally, the response included the name, department, and telephone

number of a representative who could provide additional assistance to the plaintiffs.  <u>See</u> 12

U.S.C. § 2605(e)(2)(C)(ii).  The response therefore fully complied with Nantucket Bank's

obligations, if any, under RESPA.

Since the response complied with the statute, the plaintiffs have no hope of recovery against Nantucket Bank for a violation of RESPA. The Court should therefore dismiss Count Three of the Complaint.

**E.      The Chapter 93A Claim Fails As a Matter of Law.**

The final count of the Complaint, Count Two, is a claim under Chapter 93A of the Massachusetts General Laws. That Count fails as a matter of law because, (1) the plaintiff failed to send a written demand for relief to Nantucket Bank, and (2), the substance of the plaintiff's Chapter 93A claim is entirely premised on statutory violations that fail as a matter of law.

*1.      The Plaintiff Failed to Serve Nantucket Bank With a Written Demand for Relief.*

The Chapter 93A claim against Nantucket Bank fails because the plaintiffs did not send Nantucket Bank a written demand for relief. Service of such a demand letter is a statutory prerequisite to filing suit under Chapter 93A. See M.G.L. c. 93A, § 9; Entrialgo v. Twin City Dodge, Inc., 368 Mass. 812, 812 (1975). "A demand letter listing the specific deceptive practices claimed is a prerequisite to suit and as a *special element must be alleged and proved*." Spring v. Geriatric Auth. of Holyoke, 394 Mass. 274, 287 (1985) (emphasis in original) (quoting Entrialgo, 368 Mass. at 813). "The statutory notice requirement is not merely a procedural nicety, but, rather, 'a prerequisite to suit.'" Rodi v. S. New England Sch. Of Law, 389 F.3d 5, 19 (1st Cir. 2004) (quoting Entrialgo, 368 Mass. at 812). Where the plaintiff fails to allege or prove that she sent a written demand for relief, her Chapter 93A claim must be dismissed. See id. at 19 (dismissing plaintiff's Chapter 93A claim under Fed. R. Civ. P. 12(b)(6) for failure to plead service of a written demand for relief).

In this case, the plaintiffs do not allege that they sent a written demand for relief to Nantucket Bank prior to filing suit. Their allegation regarding such a demand letter is that "The O'Connors sent a [singular] Chapter 93A demand letter to Defendant(s) on or about May 17, 2012 . . . ." Compl. ¶ 78. That allegation is clear. It alleges that the plaintiffs sent only one demand letter. Id. That letter is attached as Exhibit 5 to the Hayes Declaration. The demand letter was addressed only to Stephen Hayes, individually, and Hayes & Hayes Attorneys at Law, P.C. It was not addressed to Nantucket Bank.

The Complaint does not allege that the plaintiffs sent a separate written demand for relief to Nantucket Bank. Since the Complaint fails to allege that the plaintiffs sent such a written demand for relief to Nantucket Bank, the plaintiffs' Chapter 93A claim against Nantucket Bank fails as a matter of law. The Court must therefore dismiss Count Two against Nantucket Bank.

2.      *The Plaintiffs' Chapter 93A Claim Also Fails Because It Is Derivative of Their Other Failed Theories.*

Moreover, the plaintiffs' Chapter 93A claim fails on its merits because it is entirely premised on the plaintiffs' other flawed theories of liability. The plaintiffs allege that the defendants violated Chapter 93A by violating the MFDCPA and the FDCPA, and by violating RESPA. Since those underlying claims fail, the Chapter 93A claim must also fail on its merits.

A claim for a violation of Chapter 93A that is entirely premised on an alleged violation of another statute must fail where the alleged statutory violation fails. Brunelle v. W.E. Aubuchon Co., Inc., 60 Mass. App. Ct. 626, 628 (2004) (dismissing plaintiff's Chapter 93A claim where claim was derivative of failed claim under state building code). Courts routinely reject derivative Chapter 93A claims where the main claims, like the ones in this case, fail as a matter of law. See, e.g., In re Holland, 04-18099-JNF, 2008 WL 4809493, at *12 (Bankr. D. Mass. Oct.

30, 2008) ("Debtor cannot prevail on her Ch. 93A claim at trial because the claim is solely predicated on the RESPA violation which the Court has rejected."); Shaner v. Chase Bank, USA, N.A., 570 F. Supp. 2d 195, 201 (D. Mass. 2008) aff'd, 587 F.3d 488 (1st Cir. 2009) ("[Plaintiff's] Chapter 93A claim is based on the putative violation of TILA. . . . Her Chapter 93A claim thus fails as the TILA claim fails.").  This Court should do the same.  The Court should dismiss the plaintiffs' Chapter 93A claims against all the defendants because the alleged statutory violations on which they are based fail as a matter of law.

### III.  CONCLUSION

For all the reasons state above, the Court should dismiss the plaintiffs' complaint against all defendants and enter a judgment in favor of the defendants.

Respectfully submitted,

NANTUCKET BANK, A DIVISION OF SOVEREIGN BANK, N.A.; STEPHEN P. HAYES; and HAYES AND HAYES, ATTORNEYS AT LAW, P.C.,

By their attorneys,

/s/ Gregory S. Bombard
Mary Ellen Manganelli, BBO # 641658
Gregory S. Bombard, BBO # 679720
Bulkley, Richardson, and Gelinas, LLP
125 High Street
Oliver Street Tower, 16th Floor
Boston, MA 02110
(617) 368-2500
mmanganelli@bulkley.com
gbombard@bulkley.com

Dated: June 12, 2013

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on June 12, 2013.

/s/ Gregory S. Bombard
Gregory S. Bombard

1520354v3