



# JAMIE RANNEY PC

4 THIRTY ACRES LANE
NANTUCKET, MA 02554
508.228.9224 (PHONE)/ 508.228.4752 (FAX)
JAMIE@NANTUCKETLAW.PRO

October 7, 2011

**VIA REGULAR USPS and USPS CERTIFIED RETURN RECEIPT**

Nantucket Bank, a division of Sovereign Bank     <u>7010 1060 0002 3501 4969</u>
108 Pleasant Street
Nantucket, MA 02554

| RE: | | |
|---|---|---|
| | **Borrower(s):** | John J. O'Conner and Katherine P. O'Conner |
| | **Original Loan No.:** | Unknown |
| | **MIN No.:** | N/A |
| | **Property Address:** | 10 Austin Farm Road, Nantucket, MA 02554 |
| | **Loan Servicer:** | Nantucket Bank, a division of Sovereign Bank |
| | **Purported Current Mortgagee:** | Nantucket Bank, a division of Sovereign Bank |
| | **Purported Note Holder:** | Nantucket Bank, a division of Sovereign Bank |
| | **Date of Mortgage:** | July 6, 2007 |

Dear Sir or Madam:

Please be advised that this office represents John J. O'Conner and Katherine P. O'Conner.

Please be advised that we have been retained to investigate and, if appropriate, prosecute any and all federal and state violations in connection with the above-referenced loan. Enclosed please find a Limited Power of Attorney allowing us to speak with Nantucket Bank, a division of Sovereign Bank.

Please be advised that this debt is disputed.

**Please direct all future communications regarding this matter to the attention of the undersigned counsel, and cease all further contact with our client(s).**

This letter is being sent to complain about the accounting and servicing of this mortgage and our client(s)' need for understanding and clarification of various sale, transfer, funding source, legal and beneficial ownership, charges, credits, debits, transactions, reversals, actions, payments, analyses and records related to the servicing of this account from its origination to the present date.

To date, the documents and information we have, those that you may have sent to this office and/or our client(s)' conversations with your service representative(s) prior to this letter have been unproductive and have not answered important questions about this loan.

Given the constant national news regarding serious loan servicer abuses and the thousands of lawsuits being filed against loan servicers with respect to management of residential mortgage loan accounts nationwide, our client(s) is/are rightfully concerned that potential fraudulent and deceptive practices by their loan servicer(s); unscrupulous mortgage brokers; unlawful sales and transfers of mortgage servicing rights; unfair and deceptive and fraudulent servicing practices to enhance balance sheets; unfair and deceptive, abusive and fraudulent accounting tricks and practices; and unlawful and unfair and deceptive, abusive and fraudulent debt collection practices – all of which may have also negatively affected any credit rating, mortgage account and/or the debt or payments to which our client(s) is/are currently, or may be legally obligated.

On behalf of the above-referenced client(s), we demand absolute first hand evidence from your company of the original un-certificated or certificated security regarding the above-mentioned account number(s). In the event you do not supply the undersigned with the very security, it will be a positive confirmation on your part that you never really created, lawfully serviced or owned one in this matter.

We also hereby demand that a complete chain of transfer(s) from your company to wherever the security is now held be promptly sent to us. Absent the actual evidence of the security, we have no choice but to dispute the validity of your lawful servicing, ownership, funding, entitlement right, and the current debt you claim to be owed by our client. The term "debt" refers to the principal balance you claim to be owed by our client(s); the calculated monthly payment, calculated escrow payment and any fees claimed to be owed by your Company or any trust or entity which your company may service or sub-service.

In order to independently validate this debt, we need to conduct a complete exam, audit, review and accounting of this mortgage account from its inception through the present date.

**Upon receipt of this letter, please refrain from reporting any negative credit information (if any) about our client(s) to any credit reporting agency until your company fully responds to each of the foregoing requests. Should your company decide to report such negative credit information about our client(s) after receiving this Qualified Written Request ("QWR"), you will be subject to additional legal claims for defamation of credit under applicable law.**

You are ENCOURAGED to conduct your own investigation and audit of this account since its inception to validate the debt and amounts that you currently claim to be owed by our client(s).

We would like you to validate this debt so that it is accurate to the penny.

Please do not rely on previous servicing companies or originators' records, assurances or indemnity agreements and refuse to conduct a full audit and investigation of this account. It is our understanding that potential abuses by your company or previous servicing companies could have deceptively, wrongfully, unlawfully, and/or illegally:

- Increased the amounts of monthly payments;
- Increased the principal balance owed by our client(s);
- Increased the escrow payments;
- Increased the amounts applied and attributed toward interest on this account;
- Decreased the proper amounts applied and attributed toward the principal on this account; and/or
- Assessed, charged and/or collected fees, expenses and miscellaneous charges our client(s) is/are not legally obligated to pay under this mortgage, note and/or deed of trust.
- Mismanaged or improperly or negligently stored or transferred original documents related to this loan

In order to insure that our client(s) have not been the victim of such predatory servicing and lending practices, our client(s) have authorized a thorough review, examination, accounting and audit of the above-referenced account number by mortgage auditing and predatory servicing and/or lending experts. This exam and audit will review this mortgage account file from the date of initial contact, application and the origination of this account to the present date written above.

**Once again, this is a QWR under the Real Estate Settlement Procedures Act ("RESPA"), codified as Title 12 § 2605(e) of the United States Code as amended under the Dodd-Frank Financial Reform Act effective July 16, 2010 ("Dodd-Frank"), as well as a request for information about our client(s) loan under the Federal Truth In Lending Act 15 U.SC. §1601 ("TILA") and/or the Massachusetts Consumer Credit Cost Disclosure Act ("MCCCDA") at M.G.L. c. 140D.**

You are required to acknowledge receipt of this letter **within five (5) days** and RESPA and TILA provide for substantial penalties and fines for non-compliance or failure to answer the questions set forth in this letter **within thirty (30) days** from receipt hereof.

In order to conduct the examination and audit of this loan, we need to have full and immediate disclosure including copies of all pertinent information and documents regarding this loan. The documents requested and answers to questions are needed by our client(s) and this office to ensure that this loan is being serviced in full accordance with the law and:

- Was originated in lawful compliance with all federal and state laws, regulations including, but not limited to Title 62 of the Revised Statutes, RESPA, the federal Truth in Lending Act ("TILA") and/or the Massachusetts Consumer Credit Cost Disclosure Act ("MCCCDA"), the Fair Debt Collection Practices Act ("FDCPA"), the federal Home Ownership and Equity Protection Act ("HOEPA") and other applicable laws and regulations;

- That the origination and/or any sale or transfer of this account or monetary instrument, was conducted in accordance with proper laws and was a lawful sale with complete disclosure to all parties with an interest;

- That your company's disclosed claimed holder in due course of the monetary instrument, deed of trust, note and/or asset is holding such note in compliance with State and Federal law and is actually entitled to the benefits of payment(s) from our client(s);

- That all good faith and reasonable disclosures of transfers, sales, Power of Attorney, monetary instrument ownership, entitlements, full disclosure of actual funding source, terms, costs, commissions, rebates, "kickbacks" and fees were and still are properly disclosed to our client(s), including but not limited to the period commencing with the original loan solicitation through and including any parties, instruments, assignments, letters of transmittal, certificates of asset backed securities and any subsequent transfer thereof;

- That each servicer and/or sub-servicer of this mortgage has serviced this mortgage in full compliance with applicable laws(s) and the actual terms of the mortgage, monetary instrument/deed of trust, including but not limited to all accounting or bookkeeping entries commencing with the original loan solicitation through and including any parties, instruments, assignments, letters of transmittal, certificates of asset backed securities and any subsequent transfer thereof;

- That each servicer and/or sub-servicer of this mortgage has serviced this mortgage in full compliance with local, state and federal statutes, laws and regulations commencing with the original loan solicitation through and including any parties, instruments, assignments, letters of transmittal, certificates of asset backed securities and any subsequent transfer thereof;

- That this mortgage account has been credited, debited, adjusted, amortized and charged correctly and disclosed fully and completely commencing with the original loan solicitation through and including any parties, instruments, assignments, letters of transmittal, certificates of asset backed securities and any subsequent transfer thereof;

- That interest and principal have been properly calculated and lawfully applied to this loan;

- That any principal balance has been properly calculated, amortized and lawfully accounted for;

- That no charges, fees or expenses, not obligated by our client(s) in any agreement, have been charged, assessed or collected from this account or any other related account arising out of the subject loan transaction.

In order to validate this debt and audit this account, we need copies of all pertinent documents in their current form. We also need answers, certified, in writing, to various servicing questions which follow. For each record kept on computer or in any other electronic file or format, please provide a true, accurate and contemporaneous paper copy of all

information in each field or record in each computer system, program or database used by you that contains any information on this account or our client(s)' name.

**Please provide the undersigned with copies, front and back (where applicable), of the following documents regarding the above-referenced account number.**

**I.      Copies of Documents requested:**

1.)      Any certificated or un-certificated security used for the funding of this account;

2.)      Any and all "Pool Agreement(s)" or "servicing agreements" between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and any government-sponsored entity ("GSE") or other party.

3.)      Any and all "Deposit Agreement(s)" between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto, and any GSE or other party;

4.)      Any and all "Servicing Agreement(s)" between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and any GSE or other party;

5.)      Any and all "Custodial Agreement(s)" between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and any GSE or other party;

6.)      Any and all "Master Purchasing Agreement(s)" between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and any GSE or other party;

7.)      Any and all "Issuer Agreement(s)" between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and any GSE or other party;

8.)      Any and all "Commitment to Guarantee" agreement(s) between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and any GSE or other party;

9.)      Any and all "Release of Document" agreement(s) between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and any GSE or other party;

10.)     Any and all "Master Agreement for Servicer's Principal and Interest Custodial Account" between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and any GSE or other party;

11.)    Any and all "Servicer's Escrow Custodial Account" between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and any GSE or other party;

12.)    Any and all "Release of Interest" agreement(s) between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and any GSE or other party;

13.)    Any Trustee agreement(s) between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and trustee(s) regarding this account or pool accounts with any GSE or other party.

14.)    Please also send the undersigned copies, front, and back, of:

a.)    Any documentation evidencing any trust relationship regarding the Mortgage/Deed of Trust and any Note in this matter;

b.)    Any and all document(s) establishing any Trustee of record for the Mortgage/Deed of Trust and any Note;

c.)    Any and all document(s) establishing the date of any appointment of Trustee Mortgage/Deed of Trust and any Note, including any and all assignments or transfers or nominees of any substitute trustees(s):

d.)    Any and all document(s) establishing any Grantor for this Mortgage/Deed of Trust and any Note;

e.)    Any and all document(s) establishing any Grantee for this Mortgage/Deed of Trust and any Note;

f.)    Any and all document(s) establishing any Beneficiary for this Mortgage/Deed of Trust and any Note;

g.)    Any documentation evidencing the Mortgage/Deed of Trust is not a constructive trust or any other form of trust;

h.)    All data, information, notations, text, figures and information contained in your mortgage servicing and accounting computer systems including, but not limited to Alltel or Fidelity CPI system(s), MSP, LPS Desktop (and affiliated programs thereto), or any other similar mortgage servicing software used by you, any servicers, or sub-servicers of this mortgage account from the inception of this account to the date hereof;

i.)    All descriptions and legends of all Codes used in your mortgage servicing and accounting system so the examiners and auditors and experts retained to audit and review this mortgage account may properly conduct their work;

j.) All assignments, transfers, allonges, or other documents evidencing a transfer, sale or assignment of this mortgage, deed of trust, monetary instrument or other document that secures payment by our client(s) by this obligation in this account from the inception of this account to the present date including any such assignment on the Mortgage Electronic Registration System ("MERS");

k.) All records, electronic or otherwise, of assignments of this mortgage, monetary instrument or servicing rights to this mortgage including any such assignments on MERS;

l.) All deeds in lieu, modifications to this mortgage, monetary instrument or deed of trust from the inception of this account to the present date;

m.) The front and back of each and every canceled check, money order, draft, debit or credit notice issued to any servicers of this account for payment of any monthly payment, other payment, escrow charge, fee or expense on this account;

n.) All escrow analyses conducted on this account from the inception of this account until the date of this letter;

o.) The front and back of each and every canceled check, draft or debit notice issued for payment of closing costs, fees and expenses listed on any and all disclosure statements including, but not limited to, appraisal fees, inspection fees, title searches, title insurance fees, credit life insurance premiums, hazard insurance premiums, commissions, attorney fees, points, etc.;

p.) Front and back copies of all payment receipts, checks, money orders, drafts, automatic debits and written evidence of payments made by others or our client(s) on this account;

q.) All letters, statements and documents sent to our client(s) by your company;

r.) All letters, statements and documents sent to our client(s) by agents, attorneys or representatives of your company;

s.) All letters, statements and documents sent to our client(s) by previous servicers, sub-servicers or others in your account file or in your control or possession or in the control or possession of any affiliate, parent company, agent, sub-servicers, servicers, attorney or other representative of your company;

t.) All letters, statements and documents contained in this account file or imaged by your company, any servicers or sub-servicers of this mortgage from the inception of this account to the present date;

u.) All electronic transfers, assignments and sales of the note/asset, mortgage, deed of trust or other security instrument;

v.) All copies of property inspection reports, appraisals, BPOs and reports done on our client(s)' property;

w.) All invoices for each charge such as inspection fees, BPOs, appraisal fees, attorney's fees, insurance, taxes, assessments or any expense which has been charged to the above-referenced mortgage account from the inception of this account to the present date;

x.) All checks used to pay invoices for each charge such as inspection fees, BPOs, appraisal fees, attorney's fees, insurance, taxes, assessments or any expense which has been charged to the above-referenced account from the inception of this account to the present date;

y.) All agreements, contracts and understandings with vendors that have been paid for any charge on this account from the inception of this account to the present date;

z.) All account servicing records, payment payoffs, payoff calculations, ARM audits, interest rate adjustments, payment records, transaction histories, account histories, accounting records, ledgers, and documents that relate to the accounting of the above-referenced account from the inception of the account to the present date;

aa.) All account servicing transaction records, ledgers, registers and similar items detailing how the above-referenced account has been serviced from the inception of the account to the present date.

Further, in order to conduct the audit and review of this account, and to determine all proper amounts due, please answer the following questions concerning the servicing and accounting of this mortgage account from its inception to the present date:

**II.** Questions regarding Account **Accounting and Servicing Systems on the loan** account:

1.) Please identify each account accounting and servicing system used by your company and any servicers and/or sub-servicers or previous servicers and/or sub-servicers from the inception of this account to the present date so that our audit and forensic experts can decipher the data provided;

2.) For each account accounting and servicing system identified by your company and any sub-servicers or previous servicers from the inception of this account to the present date, please provide the name and address of the company that designed and sold the system;

3.) For each account accounting and servicing system used by your company and any sub-servicers or previous servicers from the inception of this account to the present date, please provide the complete transaction code list for each system so that we can adequately audit this account.

**III.** Questions regarding Debits and Credits in Servicing the loan account:

1.) In a spreadsheet form or in letter form in a columnar format, please detail each and every credit on this account from the date such credit was posted to this account as well as the date any credit was received;

2.) In a spreadsheet form or in letter form in a columnar format, please detail each and every debit on this account from the date such debit was posted to this account as well as the date any debit was received;

3.) For each debit and credit listed, please provide the definition for each corresponding transaction code you utilize;

4.) For each transaction code, please provide the master transaction code list used by you or previous servicers.

**IV. Questions regarding Mortgage and Assignments:**

1.) Has each sale, transfer or assignment of this mortgage, monetary instrument, deed of trust or any other instrument executed by our client(s) to secure this debt been recorded in the county property records in the county and state in which our client(s)' property is located from the inception of this account to the present date?      Yes or No?

2.) If not, why not?

3.) Is your company the servicer of this mortgage account or the holder in due course and beneficial owner of this mortgage, monetary instrument and/or deed of trust?

4.) Have any sales, transfers or assignments of this mortgage, monetary instrument, deed of trust or any other instrument executed by our client(s) to secure this debt been recorded in any electronic fashion such as MERS or other internal or external recording system from the inception of this account to the present date?      Yes or No?

5.) If yes, please provide the names of the seller, purchaser, assignor, assignee or any holder in due course to any right or obligation of any note, mortgage, deed of trust or security instrument executed by our client(s) securing the obligation on this account that was not recorded in the county records where our client(s)' property is located whether they be mortgage servicing rights or the beneficial interest in the principal and interest payments.

**V. Questions regarding Attorney's Fees applied during Servicing the loan account:**

For purposes of the questions below dealing with attorney's fees, please consider attorney fees and legal fees to be one in the same.

1.) Have attorney's fees ever been assessed to this account from the inception of this account to the present date?      Yes or No?

2.) If yes, please detail each separate assessment, charge and collection of attorney's fees to this account from the inception of this account to the present date and the date of such assessments to this account.

3.) Have attorney's fees ever been charged to this account from the inception of this account to the present date? Yes or No?

4.) If yes, please detail each separate charge of attorney's fees to this account from the inception of this account to the present date and the date of such assessments to this account.

5.) Have attorney's fees ever been collected from this account from the inception of this account to the present date? Yes or No?

6.) If yes, please detail each separate collection of attorney's fees to this account from the inception of this account to the present date and the date of such assessments to this account.

7.) Please provide the name, address and telephone number of each attorney and law firm that has been paid any fees or expenses related to this account from the inception of this account to the present date.

8.) Please identify in writing the provision, paragraph, section or sentence of any note, mortgage, deed of trust or any agreement signed by our client(s) that authorized the assessment, charge or collection of attorney's fees.

9.) Please detail and list each separate attorney's fee assessed from this account and for which each corresponding payment period or month such fee was assessed from the inception of this account to the present date.

10.) Please detail and list each separate attorney's fee collected from this account and for which each corresponding payment period or month such fee was collected from the inception of this account to the present date.

11.) Please detail and list any adjustments in attorney's fees assessed and on what date such adjustment was made and the reason for such adjustment.

12.) Please detail and list any adjustments in attorney's fees collected and on what date such adjustment was made and the reason for such adjustment.

13.) Has interest been charged on any attorney's fees assessed or charged to this account? Yes or No?

14.) Is interest allowed to be assessed or charged on attorney's fees charged or assessed to this account? Yes or No?

15.) How much total in attorney's fees have been assessed to this account from the inception to the present date?

16.)    How much total in attorney's fees have been collected from this account from the inception to the present date?

17.)    How much total in attorney's fees have been charged to this account from the inception to the present date?

18.)    Please provide copies of any and all invoices and detailed billing statements from any law firm or attorney that has billed such fees that have been assessed or collected from this account from the inception to the present date.

**VI.    Questions regarding Suspense/Unapplied Accounts used during Servicing the loan account:**

For purposes of this section, please treat the term "suspense account" and "unapplied account" as one and the same.

1).    Has there been any suspense or unapplied account transactions on this account from the inception of this account until the present date?            Yes or No?

2.)    If yes, please explain the reason for each and every suspense transaction that occurred on this account. If no, please skip the questions in this section dealing with suspense and unapplied accounts.

3.)    In a spreadsheet or in letter form in a columnar format, please provide each and every suspense or unapplied transaction, both debits and credits that has occurred on this account from the inception of this account to the present date.

**VII.    Questions regarding late fees applied during Servicing of the loan account:**

For purposes of our client(s)' questions below dealing with late fees, please consider the terms "late fees" and "late charges" to be one in the same.

1.)    Have you reported the collection of late fees on this account as interest in any statement our clients) or to the IRS?            Yes or No?

2.)    Has any previous servicers or sub-servicers of this mortgage reported the collection of late fees on this account as interest in any statement to our client(s) or to the IRS?
                            Yes or No?

3.)    Do you consider the payment of late fees as liquidated damages to your company for not receiving payment on time?            Yes or No?

4.)    Are late fees considered interest by your company?   Yes or No?

5.)    Please provide to the undersigned what expenses and damages you incurred for any payment made by our client(s) that was late.

6.) Were any of these expenses or damages charged or assessed to the above- referenced account in any other way?    Yes or No?

7.) If yes, please describe what expenses or damages were charged or assessed to the above-referenced account.

8.) Please describe what expenses your company or others incurred due to any late payment made by our client(s).

9.) Please describe what damages your company or others incurred due to any late payment made by our client(s).

10.) Please identify the provision, paragraph, section or sentence of any note, mortgage, deed of trust or any agreement signed by our client(s) that authorized the assessment or collection of late fees by your company.

11.) Please detail and list for me in writing each separate late fee assessed to this account and for which corresponding payment period or month such late fee was assessed from the inception of this account to the present date.

12.) Please detail and list each separate late fee collected from this account and for which corresponding payment period or month such late fee was collected from the inception of this account to the present date.

13.) Please detail and list any adjustments in late fees assessed, on what date such adjustment was made, and the reason for such adjustment.

14.) Has interest been charged on any late fee assessed or charged to this account?
Yes or No?

15.) Is interest allowed to be assessed or charged on late fees to this account?
Yes or No?

16.) Have any late charges been assessed to this account?
Yes or No?

17.) If yes, how much in total late charges have been assessed to this account from the inception of this account to the present date?

18.) Please provide the exact months or payment dates your company or other previous servicers or sub-servicers of this account claim that our client(s) has/have been late with a payment from the inception of this account to the present date.

19.) Have late charges been underlined collected on this account from the inception of this account to the present date?    Yes or No?

**VIII. Questions regarding Property Inspections conducted during Servicing of the loan account:**

For the purpose of this section "property inspection" and "inspection fee" refer to any inspection of property by any source and any related fee or expense charged, assessed or collected for such inspection.

1.) Have any property inspections been conducted on our client(s)' property from the inception of this account to the present date? Yes or No?

2.) If your answer is no, you can skip the rest of the questions in this section concerning property inspections.

3.) If yes, please provide the date of each property inspection conducted on our client(s)' property that is the secured interest for this mortgage, deed of trust or note.

4.) Please provide the price charged for each property inspection.

5.) Please provide the date of each property inspection.

6.) Please provide the name and address of each company and person who conducted each property inspection on our client(s)' property.

7.) Please explain why property inspections were conducted on our client(s)' property.

8.) Please explain how property inspections are beneficial to our client(s).

9.) Please explain how property inspections are protective of our client(s)' property.

10.) Please explain your company's policy on property inspections.

11.) Does your company consider the payment of inspection fees as a cost of collection? Yes or No?

12.) If yes, why?

13.) Does your company use property inspections to collect debts? Yes or No?

14.) Have you used any portion of the property inspection process on our client(s)' property to collect a debt or inform our client(s) of a debt, payment or obligation owed? Yes or No?

15.) If yes, please explain when and why?

16.) Please identify the provision, paragraph, section or sentence of any note, mortgage, deed of trust or any agreement signed by our client(s) that authorized the assessment or collection of property inspection fees.

17.) Have you labeled in any record or document sent to our client(s) or entered into any account a property inspection as a miscellaneous advance? Yes or No?

18.) If yes, please explain why?

19.) Have you labeled in any record or document sent to our client(s) a property inspection as a legal fee or attorney's fee?      Yes or No?

20.) If yes, please explain why?

21.) Please detail each separate inspection fee assessed to this account and for which corresponding payment period or month such fee was assessed from the inception of this account to the present date.

22.) Please detail each separate inspection fee collected from this account and for which corresponding payment period or month such fee was collected from the inception of this account to the present date.

23.) Please detail any adjustments in inspection fees assessed and on what date such adjustment was made and the reasons for such adjustment?

24.) Please detail and list any and all adjustments in inspection fees collected, and on what date such adjustment was made and the reasons for such adjustment?

25.) Has interest been charged on any inspection fees assessed or charged to this account?
                    Yes or No?

26.) If yes, when and how much was charged?

27.) Is interest allowed to be charged on inspection fees charged or assessed to this account?
                    Yes or No?

28.) How much total inspection fees have been assessed to this account from the inception of this account to the present date?

29.) How much total in inspection fees has been collected on this account from the inception of this account to the present date?

30.) Please forward to me copies of all property inspections made on our client(s)' property in this mortgage account file.

31.) Has any fee charged or assessed for property inspections been placed into an escrow account?      Yes or No?

**IX.    Questions regarding BPO Fees applied during Servicing of the loan account:**

1.) Have any BPOs ("Broker Price Opinions") been conducted on our client(s)' property? Yes or No?

2.) If your answer is no, you can skip the rest of the questions in this section concerning BPOs.

3.) If yes, please provide the date of each BPO conducted on our client(s)' property that is the secured interest for this mortgage, deed of trust or note.

4.) Please provide the price of each BPO.

5.) Please provide the name (or company name), address and telephone number of the person(s) who conducted the BPO.

6.) Please explain why BPOs were conducted on our client(s)' property.

7.) Please explain how BPOs are beneficial to our client(s).

8.) Please explain how BPOs are protective of our client(s)' property.

9.) Please explain your company's policy on BPOs.

10.) Have any BPO fees been assessed to this account? Yes or No?

11.) If yes, how much in total BPO fees have been charged to this account?

12.) Please identify the provision, paragraph, section or sentence of any note, mortgage, deed of trust or any agreement signed by our client(s) that authorized the assessment, charge or collection of a BPD fee.

13.) Please provide copies of all BPO reports that have been performed on our client(s)' property.

14.) Has any fee charged or assessed for a BPO been placed into an escrow account? Yes or No?

**X.  Questions regarding Force-Placed Insurance applied during Servicing of the loan account:**

1.) Has your company placed or ordered any force-placed insurance policies on our client(s)' property? If no, you may skip the rest of the questions in this section.

2.) If yes, please provide the date of each policy ordered or placed on our client(s)' property that is the secured interest for this mortgage, deed of trust or note.

3.) Please provide the price for each policy.

4.) Please identify by name, address and telephone number the agent for each policy.

5.) Please explain why each policy was placed on our client(s)' property.

6.) Please explain how the policies are beneficial to our client(s).

7.)     Please explain how the policies are protective of our client(s)' property.

8.)     Please explain your company's policy on force-placed insurance.

9.)     Have any force-placed insurance fees been assessed to this account? Yes or No?

10.)    If yes, how much in total force-placed insurance fees have been assessed to this account?

11.)    Have any force-placed insurance fees been charged to this account? Yes or No?

12.)    If yes, how much in total force-placed insurance fees have been charged to this account?

13.)    Please identify the provision, paragraph, section or sentence of any note, mortgage, deed of trust or any agreement signed by our client(s) that authorized the assessment, charge or collection of force-placed insurance fees.

14.)    Does your company have any relationship (ownership interest in or contract with) with the agent or agency that placed any policies on our client(s)' property?   If yes, please describe.

15.)    Does your company have any relationship (ownership interest in or contract with) with the carrier that issued any policies on our client(s)' property? If yes, please describe.

16.)    Has the agency or carrier your company used to place a forced-placed insurance on our client(s)' property provided you any service, computer system, discount on policies, commissions, rebates or any form of consideration?   If yes, please describe in detail.

17.)    Does your company maintain a blanket insurance policy to protect your properties when customer policies have expired?      Yes or No?

18.)    Please produce copies of all forced-placed insurance policies that have been ordered on our client(s)' property from the inception of this account to the present date.

**XI.    Additional Questions regarding Servicing of the loan account:**

For each of the following questions listed below about the servicing of this account, please provide a detailed explanation in writing that answers each question from the inception of the above-referenced account to the present date.

1.)     Did the originator or previous servicers of this account have any financing agreements or contracts with your company or an affiliate of your company?

2.)     Did the originator or previous servicers of this account have any financing agreements or contracts with your company or an affiliate of your company?

3.)     Did the originator or previous servicers of this account receive any compensation, fee, commission, payment, rebate or other financial consideration from your company or affiliate of your company for handling, processing, originating or administering this loan?   If yes, please

describe and itemize each and every form of compensation, fee, commission, payment, rebate or other financial consideration paid to the originator of this account by your company or any affiliate.

4.) Please identify the physical address (number, street, city, state, zip code) and location where the originals of this entire account file are currently located and explain in detail the means and method(s) of how the file(s) are being stored, kept and protected in this location.

5.) Where is the original monetary instrument or mortgage signed by our client(s)? Please describe its physical location (number, street, city, state, zip code) and the name, number and physical address of anyone holding these documents as a custodian or trustee, if applicable.

6.) Where is the original deed of trust or mortgage and note signed by our client(s)? Please describe its physical location (number, street, city, state, zip code) and the name, number and physical address of anyone holding these documents as a custodian or trustee, if applicable.

7.) Since the inception of this account, has there been any assignment of our client(s)' monetary instrument/asset to any other party? If the answer is yes, identify the names and addresses of each and every individual, party, bank, trust or entity that has received such assignments.

8.) Since the inception of this account, has there been any assignment of the deed of trust or mortgage and note to any other party? If the answer is yes, identify the names and addresses of each and every individual, party, bank, trust or entity that received such assignments.

9.) Since the inception of this account, has there been any sale or assignment of the servicing rights to this mortgage account to any other party? If the answer is yes, identify the names and addresses of each and every individual, party, bank, trust or entity that has received such assignments or sale.

10.) Since the inception of this account, have any sub-servicers serviced any portion of this mortgage account? If the answer is yes, identify the names and addresses of each and every individual, party, bank, trust or entity that has sub-serviced this mortgage account.

11.) Has this mortgage account been made a part of any mortgage pool since the inception of this loan? If yes, please identify by full name, trustee, address and phone number each and every mortgage pool that this mortgage has been a part of from the inception of this account to the present date.

12.) Has each and every assignment of our client(s)' asset/monetary instrument been recorded in the county land records where the property associated with this mortgage account is located?

13.) Has there been any electronic assignment of this mortgage with MERS or any other computer mortgage registry service or computer program? If yes, identify the name and address of each and every individual, entity, party, bank, trust or organization or servicers that have been

assigned to mortgage servicing rights to this account as well as the beneficial interest to the payments of principal and interest on this loan.

14.)    Have there been any investors (as defined by your industry) who have participated in any mortgage-backed security, collateral mortgage obligation or other mortgage security instrument that this mortgage account has ever been a part of from the inception of this account to the present date?  If yes, identify the name and address of each and every individual, entity, organization and/or trust.

15.)    Please identify the names of all parties and their mailing and physical addresses to all sales contracts, servicing agreements, assignments, allonges, transfers, indemnification agreements, recourse agreements and any agreement related to this account from the inception of this account to the present date.

16.)    Please provide copies of all sales contracts, servicing agreements, assignments, allonges, transfers, indemnification agreements, recourse agreements and any agreement(s) related to this account from the inception of this account to the present date.

17.)    How much was paid for this individual mortgage account by your company?

18.)    If part of a mortgage pool, what was the principal balance used by your company to determine payment for this individual mortgage loan?

19.)    If part of a mortgage pool, what was the percentage paid by your company of the principal balance in connection with the purchase of this individual mortgage loan?

20.)    Who did your company issue a check or payment to for this mortgage loan?

21.)    Please provide me with copies of the front and back of the canceled check, or any other evidence of payment for the purchase of this mortgage loan.

22.)    Did any investor approve of the foreclosure of our client(s)' property?  Yes or No?

23.)    Has HUD assigned or transferred foreclosure rights to you as required by 12 U.S.C. § 3754?

24.)    If applicable, please identify all person(s) by name, address and phone number, who approved the foreclosure of our client(s)' property.

Please provide the undersigned counsel with the documents requested herein and detailed answers to each of our questions within the lawful time frame. Upon receipt of the documents and answers, an exam and audit will be conducted that may lead to a further document request and answers to questions under an additional RESPA QWR letter.

We sincerely hope that your company answers this lawful RESPA request in accordance with law, and the questions, documents and validation of debt to the penny in order to correct abuses or schemes uncovered and documented.

## XII. Default provisions under this QWR

Your company's (including its transferees and/or assigns) failure to timely respond completely and fully to this comprehensive RESPA REQUEST via certified rebuttal to all points herein, constitutes an agreement and consent to the violations of law outlined herein and/or authorizes the immediate termination and/or removal of any and all right, title and interest (i.e, liens) that your company may maintain against any property or collateral connected to our client(s) and/or for above-referenced account.  None of the requests herein are subject to protection of "trade secrets" or are considered "privileged" or "proprietary" in any way and the use of such objections will be considered non-answers and subject to the default terms identified herein. Moreover, your company's consent and acquiescence by silence effectively waives any and all immunities or defenses your company may have to the claims and or violations agreed to in this RESPA REQUEST including, but not limited to:

1.)     Our client(s)' right to revoke and rescind any and all power of attorney or appointment that your company may have or may have had in connection with the above-referenced account and any property and/or real estate connected with this account, by virtue of your company's breach of its fiduciary responsibility, fraud and misrepresentation.

2.)     Our client(s)'s right to have any certificated or un-certificated security reregistered in our client(s)' name, and only in our client(s)' name.

3.)     Our client(s)' right of collection against your company's liability insurance and/or bond.

4.)     Our client(s)' entitlement to file and execute any instruments, as power of attorney for and by your company, including but not limited to a new certificated security or any security agreement perfected by filing a UCC Financing Statement with the Secretary of State in the State where your company is located.

5.)     Our client(s)' right to damages because of your company's wrongful registration and breach of intermediary responsibility with regard to our client(s)' asset by your company issuing to our client(s) a certified check for the original value of our client(s)' monetary instrument.

6.)     Our client(s)' right to have the above-referenced account completely set off because of your company's wrongful registration and breach of intermediary responsibility with regard to our client(s)' monetary instrument/asset, thereby requiring your company to send confirmation of set off in our client(s)' favor and issuing a certified check for the difference between the original value of our client(s)'s monetary instrument/asset, and what our client(s)' mistakenly sent to your company as a payment from the inception of this account to present.

## XIII    Full and complete response required by a person with authority

Your company, and any transferees, agents and/or assigns, when offering a certified rebuttal to this RESPA REQUEST, must do so in accordance and compliance with current statutes and/or laws by signing same as a fully liable man or woman under the penalty of perjury while offering direct testimony in the official capacity as appointed agent for your company and in accordance

with your company's Articles of Incorporation and By Laws signed by a current and duly sworn director(s) of such corporation/Holding Corporation/National Association.

Any direct certified rebuttal to this RESPA REQUEST with true and complete accompanying proof must be delivered to the address of the undersigned counsel and postmarked within thirty (30) days of your receipt of this request.

**When no verified rebuttal of this RESPA REQUEST is made in a timely manner, a "Certificate of Non-Response" shall serve as consent, judgment and/or agreement against your company by virtue of your silence and acquiescence to any and all claims and/or violations herein-stated in the default provisions, and any and all additional remedies at law or in equity to which our client(s) may be entitled.**

## XIV.    Power of Attorney:

When and if your company fails to timely rebut any part of this RESPA REQUEST, your company hereby agrees to grant unto our client(s) an unlimited Power of Attorney and full authorization to sign and endorse your company's name upon any instrument in satisfaction of the obligations of this RESPA REQUEST/Agreement or any agreement arising therefrom. Neither state law pre-emption nor any Bankruptcy proceeding shall discharge any obligations your company has under this agreement. Consent and agreement with this Power of Attorney by your company waives any and all claims you may have against our client(s), and/or defenses, and shall remain in effect until the satisfaction of all obligations by your company.

You should also be advised that our client(s) will seek the recovery of damages, costs, and reasonable legal fees for each failure to comply the questions and requests herein. Our client(s) also reserve the right hereunder to seek statutory damages of $2,000.00 for each violation of RESPA, $4,000.00 for each violation of the TILA, $1,000.00 for each violation of 15 U.S.C. 1692, *et seq.*, (the Fair Debt Collection Practices Act), treble damages under M.G.L. c. 93A (the MA Consumer Protection Act) – as well as all attorney's fees associated with any such violation(s) where provide for by law, or any other state or federal law or regulation.

You are also advised hereunder that to the extent that *Nantucket Bank* or the note or mortgage holder for whom *Nantucket Bank* purports to act may allege to be protected by any applicable statute(s) of limitation(s) with regard to any claims our client(s) may have for violations of state or federal law under the loan above-referenced, including the ability of our client(s) to rescind the loan transaction under applicable law, that any such claims are alleged to not be fully "discoverable" until full documentation is provided hereunder. Our client(s) therefore reserve all rights to any and all claims, including rescission of their loan (either affirmatively or in defense of foreclosure), from this date forward until examination of the documents can be completed.

You are also hereby advised that our client(s) have not and will not abandon the premises, **occupy the premises as their primary residence** and is/are properly maintaining same such that no site inspections are needed nor warranted. You are notified that our client(s) object to any site inspections being conducted of the premises by any agents, officers, employees or

contractor(s) hired by the lender or servicer of our client(s)' loan for which charges are sought to be assessed to our client(s)' account.

**You are also notified pursuant to M.G.L. c. 266, s. 120 – Massachusetts' "NO TRESPASS" statute - that any agents, officers, employees, subcontractors or others purporting to act with respect to the lender or servicer of our client(s)' loan are forbidden from trespassing on our client(s)' property as identified herein for any reason unless prior permission is granted therefore. This includes any property inspectors you have hired who will be subject to arrest and/or civil liability for going onto our client(s)' property without permission.**

**YOU ARE ADVISED TO IMMEDAITELY NOTIFY ANY AND ALL AGENTS, OFFICERS, EMPLOYEES SUBCONTRACTORS OR OTHERS PURPORTING TO ACT WITH RESPECT TO THE LENDER OR SERVICER OF OUR CLIENT(S)' LOAN OF THIS NO TRESPASS NOTICE.**

I await your earliest reply.

Sincerely,

Jamie Ranney, Esq.
Attorney for O'Conner
Enc.          LPOA
JTR/dat
CC:          client

## LIMITED POWER OF ATTORNEY

KNOW ALL MEN BY THESE PRESENTS that JOHN J. O'CONNOR AND KATHERIN P. O'CONNOR, owners of 10 Austin Farm Road, Nantucket, MA hereby constitute and appoint JAMIE RANNEY, Esq., of Jamie Ranney, PC, as true and lawful Attorney for them and in their name and stead to obtain information, documents and to make and negotiate agreements relative to any matters relating to loan(s) on the property located at 10 Austin Farm Road, Nantucket, MA and generally to say, do, act, answer, defend, reply and respond to all actions, matters and things whatsoever relating to 10 Austin Farm Road, Nantucket, MA 02554, and any of these matters as fully, amply and effectually, to all intents and purposes, as they ought or might personally do in their capacity. This limited power of attorney shall expressly include the authority for the Attorney hereunder to authorize any and all third parties to provide services related to any loan(s) on any property(s) identified herein, including but not limited to authorizing any and all third parties (including but not limited to forensic mortgage examiners, accountants, attorneys, etc.), without limitation, to communicate directly with loan servicers, mortgagees and attorneys for loan servicers or mortgagees at the direction of our Attorney and to obtain documents or information about any loans related to the property(s) referenced herein.

Hereby granting unto said Attorney full power and authority to act in and concerning the premises above as fully and effectually as they might do if personally present.

IN WITNESS WHEREOF, we hereunto set our hands and seals this ___15th___ day of April, 2011.

Signed and sealed in presence of

_____          _____
Witness to both                      JOHN J. O'CONNOR

                                     _____
                                     KATHERINE P. O'CONNOR

### COMMONWEALTH OF MASSACHUSETTS

Nantucket, s.s.
County

On this __15__ day of April, 2011, before me, the undersigned notary public, personally appeared the above-named     JOHN J. O'CONNOR and KATHERINE P. O'CONNOR who are _____ are personally known to me, or __✓__ proved to me through satisfactory evidence of identification, which was their driver's license(s), to be the persons whose name is signed on the foregoing instrument, and acknowledged to me that they signed it voluntarily, for its stated purpose.

_____
Notary Public
Printed Name: _Dianne Tartamella_
My Commission Expires: _October 6, 2017_

DIANNE ALEXIS TARTAMELLA
Notary Public
COMMONWEALTH OF MASSACHUSETTS
My Commission Expires
October 6, 2017