UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS, EASTERN DIVISION

| | |
|---|---|
| John J. O'Connor and Katherine P. O'Connor )<br>    Plaintiffs ) | 12-CV-11350-PBS |
| v. ) | |
| Nantucket Bank, a Division of Sovereign Bank, )<br>N.A., Stephen P. Hayes, Hayes & Hayes, )<br>Attorneys at Law, PC )<br>    Defendants ) | |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**
(Memorandum of Reasons Incorporated)

NOW COMES Plaintiffs John J. O'Connor and Katherine P. O'Connor (hereinafter "Plaintiffs," or the "O'Connors" as the case may be) by and though counsel and files their Opposition to Defendants' Motion to Dismiss. In support of their opposition Plaintiffs state as follows:

**I.   BACKGROUND**

1.   This case arises out of a residential mortgage relationship between the O'Connors and Nantucket/Sovereign Bank and the allegedly unlawful action(s) of Nantucket/Sovereign Bank and its lawyers in seeking to collect moneys from the O'Connors following an alleged non-judicial foreclosure sale of the O'Connors home in April 2012.

2.   The facts of the matter are as set forth in the O'Connors' complaint wherein the O'Connors have brought suit against the Defendants herein for violations of the Fair Debt Collection Practices Act ("FDCPA") at 15 U.S.C. 1692, *et seq.*,[1] the FDCPA's state

---

[1] With respect to the unlawful use and occupancy demand, the Hayes Defendants – in addition to violating the specific provisions of 940 CMR 7.00 listed in the complaint, at

analog – the Massachusetts Fair Debt Collection Practices Act ("MFDCPA") at G.L. c. 93. s. 49 and the MA Attorney General's regulations at 940 CMR 7.00, *et seq*, all as related to demands for "use and occupancy" payment(s) following the purported non-judicial foreclosure of the O'Connors' home.  See complaint.

3. On June 5, 2013, the parties went to trial in Nantucket District Court on the post-foreclosure eviction of the O'Connors in Nantucket District Court Docket No. 1288-SU-0013.

4. At trial on June 5, 2013, the O'Connors were granted a directed verdict on the issue of use and occupancy (finding that no moneys were owed) as well as the issue of possession (showing that Defendants had failed to show, among other things, compliance with G.L. c. 244, s. 14).  See Affidavit of Attorney Jamie Ranney attached hereto.

## II.   STANDARD OF REVIEW

In *Occasio-Hernandez v. Fortuno-Burset* 640 F.3d 1, 11-13 (1st Cir. 2011), the First Circuit Court of Appeals discussed the evolving standard of review for motions brought pursuant to Rule 12(b)(6) and stated:

> "Dismissal of a complaint pursuant to Rule 12(b)(6) is inappropriate if the complaint satisfies Rule 8(a)(2)'s requirement of "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2). *See Iqbal,* 129 S.Ct. at 1949; *Twombly* 550 U.S. at 12*12 555, 127 S.Ct. 1955. A "short and plain" statement needs only enough detail to provide a defendant with "`fair notice of what the . . . claim is and the grounds upon which it rests.'" *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955 (citing *Conley,* 355 U.S. at 47, 78 S.Ct. 99); *see also*

---

minimum violated the FDCPA: (1) by failing to state precisely "the amount of the debt" as required by 15 U.S.C. § 1692g(a)(1); (2) by giving a false impression of the character, amount, and legal status of the debt, 15 U.S.C. § 1692e(2)(A); (3) by engaging in unfair and unconscionable collection methods, 15 U.S.C. § 1692f; (4) by making threats to take unlawful legal action, 15 U.S.C. § 1692e(5); and (5) by using false or deceptive collection methods, 15 U.S.C. § 1692e(10).

*Erickson v. Pardus,* 551 U.S. 89, 93, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) ("Federal Rule of Civil Procedure 8(a)(2) requires only `a short and plain statement. . . .' Specific facts are not necessary."). However, in order to "show" an entitlement to relief a complaint must contain enough factual material "to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *See Twombly,* 550 U.S. at 555, 127 S.Ct. 1955 (citation omitted); *see also Iqbal,* 129 S.Ct. at 1950. "Where a complaint pleads facts that are `merely consistent with' a defendant's liability, it `stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal,* 129 S.Ct. at 1949 (quoting *Twombly,* 550 U.S. at 557, 127 S.Ct. 1955). In short, an adequate complaint must provide fair notice to the defendants and state a facially plausible legal claim.

In resolving a motion to dismiss, a court should employ a two-pronged approach. It should begin by identifying and disregarding statements in the complaint that merely offer "`legal conclusion[s] couched as . . . fact[]'" or "[t]hreadbare recitals of the elements of a cause of action." *Id.* at 1949-50 (quoting *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955). A plaintiff is not entitled to "proceed perforce" by virtue of allegations that merely parrot the elements of the cause of action. *See id.* at 1950; *cf. Sanchez v. Pereira-Castillo,* 590 F.3d 31, 49 (1st Cir.2009) (disregarding as conclusory, under *Iqbal*'s first prong, a factual allegation that merely "[p]arrot[ed] our standard for supervisory liability in the context of Section 1983" in alleging that defendants had "failed to [supervise] with deliberate indifference and/or reckless disregard of Plaintiff's federally protected rights"). Non-conclusory factual allegations in the complaint must then be treated as true, even if seemingly incredible. *Iqbal,* 129 S.Ct. at 1951 ("To be clear, we do not reject these bald allegations on the ground that they are unrealistic or nonsensical. . . . It is the conclusory nature of respondent's allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth."). *But cf. Peñalbert-Rosa v. Fortuño-Burset,* 631 F.3d 592, 595 (1st Cir.2011) ("[S]ome allegations, while not stating ultimate legal conclusions, are nevertheless so threadbare or speculative that they fail to cross the line between the conclusory and the factual.") (internal quotation marks omitted). If that factual content, so taken, "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," the claim has facial plausibility. *Iqbal,* 129 S.Ct. at 1949. "The make-or-break standard . . . is that the combined allegations, taken as true, must state a plausible, not a

merely conceivable, case for relief." *Sepúlveda-Villarini v. Dep't of Educ. of P.R.,* 628 F.3d 25, 29 (1st Cir.2010) (Souter, J.).

Although evaluating the plausibility of a legal claim "requires the reviewing court to draw on its judicial experience and common sense," *Iqbal,* 129 S.Ct. at 1950, the court may not disregard properly pled factual allegations, "even if it strikes a savvy judge that actual proof of those facts is improbable." *Twombly,* 550 U.S. at 556, 127 S.Ct. 1955; *see also Neitzke v. Williams,* 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989) ("Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations."). Nor may a court attempt to forecast a plaintiff's likelihood of success on the merits; "a well-pleaded complaint may proceed even if . . . a recovery is very remote and unlikely." *Twombly,* 550 U.S. at 556, 127 S.Ct. 1955 (internal quotation marks omitted); *see also id.* at 563 n. 8, 127 S.Ct. 1955 ("[W]hen a complaint adequately states a claim, it may not be dismissed based on a district court's assessment that the plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder."). The relevant inquiry focuses on the reasonableness of the inference of liability that the plaintiff is asking the court to draw from the facts alleged in the complaint."

### III.   ARGUMENT

1.)   <u>The FDCPA/MFDCPA claims with respect to the Hayes Defendants.</u>

In compliance with the requirements of *Ocasio-Hernandez*, the O'Connors have met – and indeed exceeded - the pleading requirements of Fed. R. Civ. P. Rule 8 and Defendants' motion to dismiss the O'Connors' claims as against Defendants Hayes & Hayes and Attorney Stephen P. Hayes (the "Hayes Defendants") pursuant to Rule 12(b)(6) must be denied.

For the FDCPA (and its parallel state analog, the MFDCPA) to apply, two (2) threshold criteria must be met. First, the defendants must qualify as "debt collectors". *See* 15 U.S.C. § 1692a(6). Second, the communication by the debt collectors must have been made "in connection with the collection of *any* debt." *Id.* § 1692c(a), (b).

Nowhere do the Hayes Defendants deny that they are "debt collectors" as defined under the FDCPA, the MFDCPA and the Attorney General's regulations at 940 CMR 7.00 all as alleged by the O'Connors in their complaint.  Nowhere do the Hayes Defendants deny that they sought to collect $9,600.00 in "use and occupancy" payments from the O'Connors in a complaint (signed by Attorney Hayes) they filed to evict the O'Connors from their home in Nantucket District Court.  Nowhere does Attorney Hayes deny that he was personally involved in the collection of debt from the O'Connors.  Instead, the Hayes Defendants attempt to deny that the demand made to the O'Connors under a "Notice to Vacate" dated April 13, 2012 was an attempt to collect a "debt".[2]

The NTV stated specifically: "**You are liable** for use and occupancy at [sic] $200 per day from May 1, 2012".  Emphasis supplied.  See complaint at Para. 36.  See ECF 11-2.  The O'Connors alleged that the unequivocal demand for a stated amount of "use and occupancy" – that they were purportedly "liable" for - was a demand for a "debt".  See Complaint at Para. 39.  As recognition of the nature of the "debt" demanded, the Hayes Defendants provided a "mini-Miranda" warning on the NTV itself.  See ECF 11-2.  See also 15 U.S.C. § 1692e(11).  Accordingly, the Hayes Defendants themselves –after affirming that the demand in the NTV was in fact a demand for a "debt" - are judicially estopped from arguing that the specific demand for use and occupancy was not such a demand.  See *Moore v. Mortgage Electronic Registration Systems, Inc., et al*, 848

---

[2] A copy of the "Notice to Vacate" in question is attached to the "Declaration" of Defendant Stephen P. Hayes.  See ECF Doc. 11-2.  The "Declaration" of Attorney Hayes provides no support or reasoning for the demand that the O'Connors "are liable" for use and occupancy of $200.00 per day.  Indeed, it is unclear from the "Declaration" whether or not Attorney Hayes even sent the NTV.  See "Declaration" at ECF 11 stating only that Attorney Hayes "signed" the NTV and that a copy of it was made by "someone with knowledge".

F.Supp.2d 107, (2012) (citing *Pettway v. Harmon Law Offices, P.C.,* No. 03-cv-10932-RGS, 2005 WL 2365331, *5 & n. 10 (D. Mass. Sept. 27, 2005) (citing the selfsame debt collection language as grounds for concluding that a law office was engaged in collection activity); *In re Maxwell,* 281 B.R. 101, 119 (Bkrtcy.D.Mass.2002) (rejecting defendant's argument that it was not a debt collector because it sent plaintiff letters "in which it represented to her that it was acting as a debt collector under the FDCPA").

Even if the Hayes Defendants did not admit that the moneys they asserted the O'Connors were "liable for" it is clear that the "use and occupancy" payments – and the subsequent efforts to collect same in a summary process action – are and were attempts to collect a "debt" as defined under the FDCPA. The FDCPA defines "debt", in pertinent part, to mean "any obligation or alleged obligation of a consumer to pay money." 15 U.S.C. § 1692a(5). See also *Arruda v. Sears, Roebuck & Co, et al*, 310 F.3d 13, 23 (1997). The definition of a "debt" under the MFDPCA is even broader.[3] In this case, it is undisputed that the O'Connors are consumers under a residential loan – a fact not denied by Defendants. It is also undisputed that the Defendants' demands for specific use and occupancy amounts were demand(s) for the payment of moneys from the O'Connors that related to the loan they obtained from Nantucket/Sovereign Bank after a

---

[3] 940 CMR 7.00 – the regulations related to the MFDCPA - define **"debt"** as " . . . money or its equivalent which is, or is alleged to be, more than 30 days past due and owing, unless a different period is agreed to by the debtor, **under a single account as a result of a purchase, lease, or loan of goods, services, or real or personal property, for personal, family or household purposes or as a result of a loan of money which is obtained for personal, family or household purposes whether or not the obligation has been reduced to judgment.** (emphasis supplied). Clearly the demand for "use and occupancy" – arising as it did from the purported foreclosure of the O'Connors' home – is a "debt" under the MFDCPA. Pursuant to 940 CMR 7.10 a more "generous" or favorable (to borrowers) definition of the term "debt" under the MFDCPA is not preempted or displaced by the FDCPA.

purported foreclosure of their home. The demand under the NTV (which was itself a prerequisite to filing a summary process action) were clearly followed by attempts to collect that money in Nantucket District Court. The moneys demanded by Defendants – if not "debts" in and of themselves, are or were at least "incidental" to the consumer transaction (the O'Connors' loan) and, therefore, covered by the FDCPA. See *Andrews v. South Coast Legal Services, Inc., et al*, (D. Mass.) No. 07-10188-JGD (2008) citing *Shula v. Lawent,* 359 F.3d 489, 492 (7th Cir.2004). If deemed "incidental" to the consumer debt, the Defendants may still be found liable under 15 U.S.C. § 1692f(1) of the FDCPA. The Hayes Defendants would have the Court believe that because the $200.00 per day amounts demanded from the O'Connors were not yet shown to be due (despite their efforts to collect them after a foreclosure) – that no "debt' (as defined by the FDCPA or the MFDCPA) was demanded. This argument is wishful thinking.

      Pursuant to G.L. c. 186, s. 13 and G.L. c. 239, s. 1 a tenancy can only be terminated (and summary process commenced) by and through a "Notice to Quit" or similar notice. The NTV in this matter purports to be the required notice. See ECF 11-2. The O'Connors, as occupants in a property they were the purported mortgagors of, maintain status as "tenants at sufferance" after a foreclosure. "Tenants at sufferance" are "liable to pay rent for such time as they may occupy" a foreclosed premises. G.L. c. 186, s. 3. But logically (and practically), such "rent" can only be set by a judge after a summary process hearing. See *Swift* v. *Boyd,* 202 Mass. 26, 28 (1909) (in absence of agreement, a tenant at sufferance is liable for reasonable "rent" [i.e. use and occupancy]). In the O'Connors' complaint, they alleged that the Defendants simply made up the outrageous $200.00 per day "use and occupancy" demand for unfair, deceptive and

misleading reasons (in violation of the FDCPA and MFDCPA) – i.e. to intimidate the O'Connors into leaving their home without going through the judicial eviction process. See complaint at para. 50, 52. Nowhere do the Defendants even attempt to justify the $200.00 per day amount demanded. When they did not vacate the premises, the Defendants sued the O'Connors 1.) for possession of their home as well as 2.) for the moneys demanded under the NTV. As proof of the unfair and deceptive nature of the $200.00 per day demand – the Defendants didn't even bother to offer any evidence on the subject of use and occupancy at trial (or any evidence that they foreclosed on the O'Connors in accordance with the law for that matter). See Affidavit of Jamie Ranney. This is proof that they never had any intention of trying to collect the moneys demanded (despite their legal right to do so under G.L. c. 186, s. 3).

The Hayes Defendants state in their motion that "It is inaccurate to suggest that the defendants were demanding payment of that [$200.00 per day] amount." This statement – and the entire position of the Hayes Defendants in this regard - is disingenuous at best and frivolous at worst. The NTV stated – not that use and occupancy payments in *some amount* (which could only legally be set by a court after a summary process hearing pursuant to G.L. c. 239) *would be sought*, but that **"You** [the O'Connors] **are liable"**. See ECF 11-2. Defendants then moved to collect these moneys by and through an action for possession and rent. See Ex. _____. Even though communications from debt collectors are viewed under a "least sophisticated consumer" standard[4] – there is nothing equivocal about the demand made by the Hayes Defendants – or the attempts to collect these moneys. Any consumer presented with such a demand –

---

[4] See *In re Maxwell*, supra.

8

stating **"You are liable"** for a $200.00 per day use and occupancy charge – would think that this was the amount they were going to be liable for. And, true to their threats, the Defendants sought to collect this money from the O'Connors in the eviction action. The $200.00 per day demand in the NTV is further deceptive and misleading – and thus violative of the FDCPA - because nowhere in the NTV does it state that use and occupancy amounts can only be established by a court after hearing. See ECF 11-2.

The Hayes Defendants' reliance on *Baer v. Harmon Law Offices, PC*, No. 3:08-30063-MAP, 2009 WL 102698 at *1 (D. Mass. Jan. 14, 2009) is unavailing. The facts in *Baer* – an unpublished decision regarding a proposed class action – are not analogous to the instant case. In *Baer*, the putative class plaintiffs were tenants in foreclosed properties who objected to the landlord's service of notices to quit with suggestions thereon that "use and occupancy" payments would be demanded if the landlord had to evict them in court proceedings. The tenants alleged that such demands were violations of the FDCPA. The Court found that such demands were not violations of the FDCPA. Tenants in foreclosed properties are considered "tenants at will" under Massachusetts law. See G.L. c. 186, s. 13A. They plaintiffs in *Baer* were not, however, the former owner(s) of the properties in question – i.e. "tenants at sufferance" - as is the case here. Moreover, nowhere in *Baer* was it suggested that a specific, enumerated demand was made for use and occupancy payments as in the instant case – nor was it suggested that the demand was made for unfair, deceptive and misleading reasons – as in the instant case. *Baer* is simply not applicable to the case at hand. The only other case that Defendants cite as support for their position that demanded use and occupancy payments

are not "debts" under the FDCPA - is a case related to "condo fees". See Defendants' motion at p. 8.

To the extent that the Hayes Defendants attempt to argue that the definition of "debt" proscribed by the MFDCPA is "narrower" than that of the FDCPA, their arguments are unavailing. The requirement under the MFDCPA must be due for thirty (30) days before the MFDCPA will apply does not act as a bar to the O'Connors' MFDCPA claims. Although the demand for the $200.00 per day payments that the O'Connors would "be liable for" was alleged to be only due after May 1, 2012 (some two (2) weeks after the NTV was issued), the Defendants proceeded with their efforts to collect this "debt" by filing a summary process summons and complaint in Nantucket District Court Docket No. 1288-SU-0013 on or about June 6, 2012. See Ex. A hereto. This was after the Hayes Defendants were warned – by a Chapter 93A demand letter on May 17, 2012[5] – of the violation(s) of the FDCPA and MFDCPA. The Hayes Defendants chose to ignore the Chapter 93A letter and Attorney Hayes signed the summary complaint on behalf of the Bank Defendants – seeking "9,600 [sic] use and occupancy" on May 21, 2012 – more than thirty (30) days after the April 13, 2012 NTV.[6] See Ex. B.

---

[5] See Chapter 93A letter dated May 17, 2012 at Ex. A. See the response from the Hayes Defendants at Ex. B.

[6] It is worth noting that despite the demand to the O'Connors that they "were liable" for the $200.00 per day "use and occupancy" charge on the NTV, the "Account of Use and Occupancy Claimed by Plaintiff" that Attorney Hayes filed with the summary process summons and complaint included only an (unsupported) "estimate" of $200.00 per day. See Ex. A.

2.     The FDCPA/MFDCPA claims with respect to the Bank Defendants.

Nantucket/Sovereign Bank (the "Bank Defendants") argue that they cannot be held "vicariously liable" for the acts of their attorneys under the FDCPA. The Bank Defendants are mistaken. First, the O'Connors do not allege solely that the Bank Defendants are vicariously liable for the acts of their attorneys. They claim that the Bank Defendants *themselves* are liable under the MFDCPA. See complaint at para. 67. The MFDCPA defines a "creditor" as:

> " . . . *any person and his agents, servants, employees, or attorneys engaged in collecting a debt owed or alleged to be owed to him by a debtor* and shall also include a buyer of delinquent debt who hires a third party or an attorney to collect such debt provided, however, that a person shall not be deemed to be engaged in collecting a debt, for the purpose of 940 CMR 7.00, if his activities are solely for the purpose of serving legal process on another person in connection with the judicial enforcement of a debt."

See 940 CMR 7.03.

Clearly the Bank Defendants fit the definition of a "creditor" under the MFDCPA. The Bank Defendants do not deny this. Rather the Bank Defendants, citing a now-inapplicable (old) version of the MFDCPA,[7] claim that they are exempted from the definition of the term "creditor" under the MFDCPA. Nowhere in the definition of the term "creditor" under the current version of the MFDCPA – and the regulations thereto under 940 CMR 7.00, *et seq*. - are the Bank Defendants immunized from actions – taken in their name by their attorneys – to attempt to collect a debt from the O'Connors by and through the actions identified in the complaint. It is true that the Bank Defendants may have claims against their attorneys for their violation(s) of law (for which the Bank

---

[7] See Defendants' motion at FN2 citing provisions of the MFDCPA that were in effect prior to March 2, 2012.

11

Defendants may also be liable), but that's between those parties and has nothing to do with the O'Connors.

Even if the definition of "creditor" was somehow more restrictive under the FDCPA (excluding "creditors" from the definition of "debt collectors") than the MFDCPA (which does not define the term "debt collectors"), nowhere in their instant motion do the Defendants argue that the FDCPA's definition of "debt collector" preempts the MFDCPA's definition of the term "creditor". Even if the Defendants made such an argument, it would be without merit. The FDCPA excluded "creditors" from the definition of "debt collectors" where a creditor seeks to enforce its own security interest. 15 U.S.C. § 1692(a(6). But that's not what the Bank Defendants were doing in this case. In this case the Bank Defendants were clearly seeking to collect moneys from the O'Connors *after* the Bank Defendants (by and through the Hayes Defendants) had purportedly enforced the security interest under the mortgage they had with the O'Connors by foreclosing on them. Accordingly, nothing in the FDCPA prohibits the definition of the term "creditor" under the MFDCPA from applying to the Bank Defendants in this case and the Bank Defendants' motion to dismiss based on this argument must be denied.

     3.    <u>The RESPA claims with respect to the Bank Defendants.</u>

The O'Connors allege in their complaint that the Bank Defendants violated the requirements of 12 U.S.C. § 2501(e) (the "Real Estate Settlement Procedures Act"; "RESPA") by failing and refusing to properly respond to a QWR letter sent to the Bank Defendants pursuant to RESPA on or about October 7, 2011.[8] In this letter, it was

---

[8] See ECF 10-1 (QWR); ECF 10-3 (QWR response)

alleged that there were errors present in the Nantucket Bank loan transaction. ECF 10-1. Some requests in the QWR letter, the O'Connors concede, had no obvious relevance to their loan.  Most of the requests however, clearly related to the "servicing" of the O'Connors' loan under their mortgage with Nantucket Bank. ECF 10-1.

A QWR is written correspondence from a borrower to the servicer of a "federally related mortgage loan" that either seeks information regarding the servicing of the loan or requests a correction to the account and provides reasons for the borrower's belief that the account is in error. 12 U.S.C. § 2605(e)(1)(B).  At the time the QWR was sent in this matter, Nantucket Bank was required acknowledge receipt of the QWR within twenty (20) business days, *id*. § 2605(e)(1)(A), and provide a more complete response to the borrower within sixty (60) business days, *id*. § 2605(e)(2).  Failure to fulfill these obligations subjects the servicer to liability for "any actual damages to the borrower as a result of the failure," or, "in the case of a pattern or practice of noncompliance," statutory damages. *Id*. § 2605(f)(1).[9]

The Bank Defendants' position that the QWR letter was not in fact a QWR is completely without merit.  As recently discussed by Judge William C. Hillman in the U.S. Bankruptcy Court, "RESPA does not require any magic language before a servicer must construe a written communication from a borrower as a qualified written request and respond accordingly. . . . *Any reasonably stated written request for account information can be a qualified written request*." (emphasis in the original).  *In re Julien* (Bankr. Ma.) Case No. 10-222026, AP No. 11-1103 (March 18, 2013) (citing *Catalan v.*

---

[9] The O'Connors alleged actual and statutory damages under RESPA.  See complaint at para. 95-99

*GMAC Mortg. Corp.,* 629 F.3d 676, 687 (7th Cir. 2011)). Judge Hillman went on to state:

> ". . . the Debtor complied with the statutory requirements for a QWR under 12 U.S.C. § 2605(e)(1)(B)(i), where she sent written correspondence to the Defendant that included her name and account information. While the Debtor did not state why she believed her account was in error, she instead made a detailed request for information regarding, *inter alia,* her monthly interest rate, scheduled payments (both pre-and post-petition), how payments are applied to her account, account balances, and the incurrence of additional expenses, charges, and fees.[26] As the statute is written in the alternative, it was unnecessary for the Debtor to couple these requests with specific assertions of error. Thus, I find that the Letter contained a sufficiently detailed request for information satisfying 12 U.S.C. § 2605(e)(1)(B)(ii)."

The O'Connors' QWR to the Bank Defendants clearly met the very minimal requirements of being a valid QWR letter. The Bank Defendants claim that "most of the requests bear little of no apparent connection to the plaintiffs or their mortgage loan". See Defendants' motion at p. 12. This representation is simply false and frivolous. A plain reading of the QWR shows that virtually all of the requests are directed at the O'Connors' mortgage loan. ECF 10-1. The QWR made numerous requests for information and posed a significant number of questions – burdensome to the Bank Defendants though they may have been – that required responses since they related to the servicing of the O'Connors' loan. In fact, the O'Connors complaint listed a long series of questions related to the servicing of their loan account that went completely unanswered by the Bank Defendants in their QWR response. See complaint at para. 22. The Bank Defendants were required by RESPA to respond to the O'Connors' questions and requests for information (to the extent that they were relevant to the O'Connors' loan) and to provide answer(s) to the request(s) for information. They did not. The Bank

14

Defendants just ignored the requests. Instead – they answered no questions at all (even those that merely required a "yes" or "no" answer) – and provided copies of only four (4) documents. ECF 10-3. The only relevant document that the Bank Defendants provided – the purported loan history – was provided without the requested "key" to interpret it and thus was useless to the O'Connors since it is incapable of reaosnale interpretation without a "key".[10]

After receiving the QWR, the Bank Defendants were required – within the required time frame and after conducting a *legitimate* investigation – to provide the O'Connors with information requested and a written explanation or clarification that included at minimum:

(i) information requested by the borrower or an explanation of why the information is unavailable or cannot be obtained by the servicer; and

(ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower.

12 U.S.C. § 2605(e)(2)(C).

See also *LeDoux v. JP Morgan Chase, N.A,* Civil No. 12-cv-260-JL, Opinion No. 2012 DNH 194. (D. N.H. November 20, 2012);

The Bank Defendants failed to comply with the requirements of § 12 U.S.C. § 2605(e)(2)(C)(i) above since virtually none of the requested information was provided

---

[10] The Bank Defendants make reference to "bizarre" request(s) for information on the servicing software used to account for the O'Connors' loan and other requests for information as to why property inspections – clearly related to "servicing" – are required and/or were performed (if they were not, the Bank Defendants could merely have stated so). It is unclear why such requests would be considered "bizarre" since such information – clearly related to the servicing of the loan - would be required for the O'Connors to be able to determine the legality of the servicing regime, to retain expert(s) to examine and evaluate whether the loan servicing software used by the Bank Defendants was properly applying payments, credits, interest, fees, etc., all in accordance with the law and with the terms of the note and mortgage.

15

and no legitimate reasons – in fact no reasons at all - were given to the O'Connors as to why the information requested was not so provided. See ECF 10-3.[11] "RESPA requires more than just a blanket assertion that the information requested by a borrower is unavailable; *it requires an "explanation of why the information is unavailable." Id*. § 2605(e)(2)(C)(i) (emphasis added); cf. *McDonald v. OneWest Bank, FSB*, No. C10-1942RSL, 2012 WL 555147, *2 (W.D. Wash. Feb. 21, 2012) (rejecting "the proposition that any response, no matter how cursory and uninformative, shields a loan servicer from RESPA liability"). *LeDoux* at 11.

4.)   The Chapter 93A claims against the Defendants.

The complaint alleges sufficient facts that the Defendants violated Chapter 93A in this matter.

   A.  The Bank Defendants

With respect to the Bank Defendants, the O'Connors have alleged that Chapter 93A liability attaches as a result of their violations of the MFDCPA and the regulations thereto (see complaint; Count Two) and as a result of the failure to properly respond to the O'Connors' QWR letter (in violation of RESPA). The Chapter 93A claims against the Bank Defendants pursuant to the MFDCPA, 940 CMR 7.07 and RESPA are *per se* and derivative. If violations of the MFDCPA and 940 CMR 7.00, *et seq*., are found, then violations of Chapter 93A must be found. See 940 CMR 7.07. If violations of RESPA –

---

[11] The Bank Defendants have established a "pattern and practice" of failing and refusing to properly respond to QWR letters. The Bank Defendants engaged in substantially the same response to another QWR for a borrower on Nantucket. See Defendants' Opp. to Plaintiff's Motion for Summary Judgment; *Sovereign Bank v. Sturgis*, (D. Mass.) No. 11-10601-DPW; ECF 62. *Sturgis* represented an even more egregious case where the Bank Defendants demanded a $5.00 per page "fee" for copies of documents requested by the borrowers in that case. See also complaint at para. 94.

a consumer protection statute - are found, then violations of Chapter 93A must be found. See G.L. c. 93A, § 2[12]; 940 CMR 3.16(4); see also *Okoye v. Bank of New York Mellon*, *et al* (D. Mass.) No. 10-11563-DPW (2011).[13] Given the *per se* and derivative liability claims, there is/are no demand letter requirement in order to find a violation of Chapter 93A as against the Bank Defendants under the facts of this case and the Bank Defendants' motion to dismiss in this regard must be denied.

    B. <u>The Hayes Defendants.</u>

It bears noting that nowhere in the Defendants' instant motion – or in the June 15, 2012 letter which purported to respond to the O'Connors' Chapter 93A letter - do the

---

[12] "Without limiting the scope of any other rule, regulation or statute, an act or practice is a violation of M.G.L. c. 93A § 2 if:

(1) It is oppressive or otherwise unconscionable in any respect; . . .

(3) It fails to comply with existing statutes, rules, regulations or laws, meant for the protection of the public's health, safety, or welfare promulgated by the Commonwealth or any political subdivision thereof intended to provide the consumers of this Commonwealth protection."

[13] "The case law is inconsistent as to whether a violation of RESPA alone may be a predicate for a Chapter 93A violation. Without providing any underlying analysis, the Massachusetts Appeals Court has stated that "[n]either may chapter 93A liability be premised upon asserted violations of the Real Estate Settlement Procedures Act (RESPA), or upon either the Federal or Massachusetts Truth in Lending Acts (TILA)." *Horvath v. Adelson, Golden & Loria, P.C.,* 773 N.E.2d 478, 2002 WL 1931997, at *4 (Mass. App. Ct. Aug. 21, 2002) (unpublished table opinion) (*per curiam*). But, in *Barnes v. Fleet Nat'l Bank, N.A.,* 370 F.3d 164, 176 (1st Cir. 2004), the First Circuit held that violations of the TILA, or Truth in Savings Act, 12 U.S.C. § 4301 *et seq.,* constitute *per se* Chapter 93A violations. *See also Ording,* 2011 WL 99016, at *6-7. Other courts have denied motions to dismiss such Chapter 93A claims, noting that an act or practice violates Chapter 93A if it "violates the Federal Trade Commission Act, the Federal Consumer Credit Protection Act or other Federal consumer protection statutes within the purview of M.G.L. c. 93A, § 2." 940 C.M.R. § 3.16(4). Such courts have assumed or found that RESPA is a consumer-protection statute within the meaning of § 3.16(4) and have permitted cases alleging violations of RESPA to proceed beyond the motion-to-dismiss stage. *See Martin v. TD Bank, N.A.,* No. 10-10409, 2011 WL 1599692, at *2 (D. Mass. Apr. 27, 2011) (Zobel, J.); *McDermott,* 2009 WL 1298346, at *3; *In re Holland,* No. 06-1418, 2008 WL 4809493, at *12 (Bankr. D. Mass. Oct. 30, 2008) (Feeney, Bankr. J.)."

17

Hayes Defendants deny that they are subject to the provisions of Chapter 93A in these matters.  In any case, a Chapter 93A demand letter was sent to the Hayes Defendants prior to suit in this matter.  See Ex. A.  Thus, the O'Connors' 93A claims – even if they were not *per se* and derivative (which the O'Connors argue that they are under the FDCPA and 940 CMR 7.07) - are properly before the Court.  The Hayes Defendants responded to the O'Connors' demand letter, but not in accordance with the requirements of Chapter 93A which required, among other things, a "reasonable offer of settlement" within thirty (30) days.  See G.L. c. 93A, § 9; see also Ex. B.  The Hayes Defendants' Chapter 93A reply was, suffice to say, unresponsive to the issues raised by the O'Connors and made no offer of settlement.  See Ex. B.  Accordingly, the Hayes Defendants' failure to properly respond to a Chapter 93A demand letter is alleged, in and of itself to be a violation of G.L. c. 93A. Moreover, for the reasons stated in this complaint, the Hayes Defendants *are* liable for the violations of the FDCPA, MFDCPA and/or 940 CMR 7.00 all as stated in the complaint.

## IV.     CONCLUSION

For the foregoing reasons, the O'Connors respectfully requests that this Honorable Court:

    1.) DENY the Defendants' Motion to Dismiss;

    2.) AWARD the O'Connors their costs and attorney's fees in defending the motion;

    3.) If the Court is inclined to ALLOW the Defendants' motion to dismiss, GRANT the O'Connors thirty (30) days to AMEND their complaint; and

    4.) GRANT such other and further relief as this Court deems meet and just.

DATED: July 8, 2013
           Nantucket, MA

John J. O'Connor and Katherine P. O'Connor
By their attorney,

/s/ Jamie Ranney, Esq.

_____
Jamie Ranney, Esq. BBO#643379
Jamie Ranney, PC
4 Thirty Acres Lane
Nantucket, MA 02554
508-228-9224 (tel)
508-815-1318 (efax)
jamie@nantucketlaw.pro

## CERTIFICATE OF SERVICE

I, Jamie Ranney, Esq. do hereby certify that the documents referenced above and filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on July 8, 2013.

/s/ Jamie Ranney, Esq.

_____
Jamie Ranney, Esq. BBO#643379
Jamie Ranney, PC
4 Thirty Acres Lane
Nantucket, MA 02554
508-228-9224 (tel)
508-815-1318 (efax)
jamie@nantucketlaw.pro