UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOHN J. O'CONNOR and KATHERINE P. O'CONNOR, | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) CIVIL NO. 13-11350-PBS ) |
| NANTUCKET BANK, A DIVISION OF SOVEREIGN BANK, N.A., STEPHEN P. HAYES, and HAYES & HAYES, ATTORNEYS AT LAW, PC, | ) ) ) ) ) |
| Defendants. | ) ) |

**MEMORANDUM AND ORDER**

January 16, 2014

Saris, U.S.D.J.

**I. INTRODUCTION**

Plaintiffs John J. O'Connor and Katherine P. O'Connor have filed suit against Nantucket Bank, a division of Sovereign Bank, N.A.,[1] and its counsel, Stephen P. Hayes and Hayes & Hayes, PC. for violations of the Fair Debt Collection Practices Act ("FDCPA") under 15 U.S.C. § 1692, et. seq., the Massachusetts debt collection statute at Gen. Laws ch. 93, § 49 and corresponding regulations (Count One); Massachusetts Gen. Laws

---

[1] On October 23, 2013, Nantucket Bank notified the Court that as of October 17, 2013, Sovereign Bank officially changed its name to Santander Bank, N.A. (Docket No. 27). For consistency and simplicity's sake, the Court refers to the parties as they were originally named in the pleadings.

ch. 93A (Count Two); and the Real Estate Settlement Procedures Act ("RESPA") under 12 U.S.C. § 2601 (Count Three). Plaintiffs allege that these violations occurred as a result of Defendants' demands for "use and occupancy" payments following a non-judicial foreclosure of the O'Connors' home in Nantucket, MA and their failure to respond to Plaintiffs' request for loan-servicing information.

## II. STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The court "must take the allegations in the complaint as true and must make all reasonable inferences in favor of the plaintiffs." Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993). This highly deferential standard of review "does not mean, however, that a court must (or should) accept every allegation made by the complainant, no matter how conclusory or generalized." United States v. AVX Corp., 962 F.2d 108, 115 (1st Cir. 1992). Dismissal for failure to state a claim is appropriate when the pleadings fail to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." Berner v. Delahanty, 129

F.3d 20, 25 (1st Cir. 1997)(quoting Gooley v. Mobil Oil Corp., 851 F.2d 513, 515 (1st Cir. 1988) (internal quotation marks omitted)).

The "tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Iqbal, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. "The Court's assessment of the pleadings is 'context-specific,' requiring 'the reviewing court to draw on its judicial experience and common sense.'" Maldonado v. Fontanes, 568 F.3d 263, 269 (1st Cir. 2009)(quoting Iqbal, 556 U.S. at 663-64).

This case largely revolves around the content of various letters not attached to the complaint. Rather, Defendants submitted them in connection with the motion to dismiss.[2] Ordinarily, a court may not consider any documents that are

---

[2] Specifically, Defendants included the following in their motion to dismiss: a copy of a letter dated October 7, 2011, addressed to Nantucket Bank and signed by attorney Jamie Ranney, a letter dated November 1, 2011, addressed to Jamie Ranney and signed by Emily Hamilton, Vice President of Operations at Nantucket and a letter dated December 27, 2011, addressed to Jamie Ranney and signed by Emily Hamilton. These letters were attached to a declaration of Zona V. Tanner-Butler, Market Executive of Nantucket Bank, for the purpose of authenticating the documents. Defendants also included a copy of the Notice to Vacate dated April 13, 2012, addressed to the O'Connors and signed by attorney Hayes as attorney for Sovereign Bank, N.A., and a copy of a letter dated May 17, 2012, addressed to attorney Hayes and signed by Jamie Ranney. These letters were attached to a declaration of Stephen Hayes.

outside of the complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment. Watterson, 987 F.2d at 3. However, there is a narrow exception "for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint." Id. When the complaint relies upon a document whose authenticity is not challenged, such a document "merges into the pleadings" and the court may properly consider it under a Rule 12(b)(6) motion to dismiss. Beddall v. State St. Bank & Trust Co., 137 F.3d 12, 17 (1st Cir. 1998); see Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co., 267 F.3d 30, 33-34 (1st Cir. 2001) (affirming a dismissal of a suit based on an interpretation of a settlement agreement that was "not appended to or expressly incorporated in [the] complaint" because alleged liability under the complaint depended "directly" upon whether the "claims [were] interpreted to have been released under the . . . Settlement Agreement" and authenticity of the agreement was not challenged).

Because the authenticity of these letters has not been disputed, the letters were extensively referred to in the complaint, and Plaintiff has not objected, the court will consider the letters.

### III.   **FACTUAL BACKGROUND**

The following facts, culled from the complaint and letters, are assumed to be true for the purpose of this motion to dismiss.

On July 6, 2007, John and Katherine O'Connor received a residential loan from Nantucket Bank, a division of Sovereign Bank, N.A., to purchase their home in Nantucket, Massachusetts. Compl. ¶ 7. On June 20, 2011, the law firm Cohn & Dussi, LLC, made a demand for a debt allegedly due to Nantucket Bank under the loan on the property. Compl. ¶ 11. By a letter dated June 27, 2011, the O'Connors' attorney Jamie Ranney informed Cohn & Dussi that the O'Connors disputed the debt, asked for debt validation, and requested that Cohn & Dussi not contact the O'Connors directly. Compl. ¶ 12. By a letter dated July 1, 2011, Cohn & Dussi replied, stating that "other counsel" was handling the matter. Compl. ¶ 13. The "other counsel" referenced in Cohn & Dussi's letter was Attorney Stephen P. Hayes of the law firm Hayes & Hayes, P.C. Compl. ¶ 14. Attorney Hayes is a shareholder of Hayes & Hayes. Compl. ¶ 4.

On October 7, 2011, Attorney Ranney sent Nantucket Bank a "Qualified Written Request" ("QWR") under the Real Estate Settlement Procedures Act ("RESPA"). The request was 21 pages long and stated in its introduction: "This letter is being sent to complain about the accounting and servicing of this mortgage and our client(s)' need for understanding and clarification of

various sale, transfer, funding source, legal and beneficial ownership, charges, credits, debits, transactions, reversals, actions, payments, analyses and records related to the servicing of this account from its origination to the present date." Mot. to Dismiss, Tanner-Butler Decl., Ex. 1. The letter goes on to request copies of 30 various types of documents (for example, the twelfth requested document was "Any and all 'Release of Interest' agreement(s) between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and any GSE or other party.") Id. at 6-8. Further, the letter includes ten additional categories of specifically requested information; each category contains multiple enumerated questions. Id. at 8-18. In total, these ten categories contain approximately 140 additional questions. Id.

A Nantucket Bank letter to Attorney Ranney dated November 1, 2011, stated: "On October 12, 2011 we received your correspondence dated October 7, 2011 . . . . We are currently conducting an investigation into your request and will provide you with a response within the allowable time frame." Mot. to Dismiss, Tanner-Butler Decl., Ex. 2. By letter dated December 27, 2011, Nantucket Bank responded again with a cover letter stating, "To the extent that your letter identifies what you believe to be an error in your account or seeks specific information concerning

the servicing of your loan, this response treats your letter, or those portions of your letter, as a qualified written request under RESPA." Mot. to Dismiss, Tanner-Butler Decl., Ex. 3. The letter enclosed four documents, including: a copy of the note and mortgage the O'Connors signed, the O'Connors' loan history, a copy of the loan modification documents executed by the O'Connors on or about November 3, 2010, and a copy of an appraisal for the property dated September 5, 2011. Id. The letter also stated, "To the extent that your letter requests information that is overly broad, vague, onerous and/or burdensome, we have not provided a response to such items, as we consider these requests to be improper requests and outside of the scope of what is intended to be covered under a qualified written request. If you provide us with a more narrow and specific request, we will consider your request and respond accordingly." Id.

On April 9, 2012, Nantucket Bank conducted a non-judicial foreclosure sale of the home. Compl. ¶ 32. On April 13, 2012, Attorney Hayes sent the O'Connors a "notice to vacate" demanding that they vacate the property within 30 days. Compl. ¶ 33-36; Mot. to Dismiss, Decl. Stephen P. Hayes, Ex. 4. The notice to vacate stated that the O'Connors "are liable for use and occupation at $200 per day from May 1, 2012." Id. The notice also included a "Notice of Important Rights" under the FDCPA. Id. The Notice of Important Rights states that "Hayes & Hayes, Attorneys

at Law, P.C. is acting as a debt collector, pursuant to the federal [FDCPA]." Id.

On May 17, 2012, Attorney Ranney sent a letter to Attorney Hayes and Hayes & Hayes challenging the legality of the foreclosure action underlying the notice to vacate. Compl. ¶ 55; Mot. to Dismiss, Decl. Stephen P. Hayes, Ex. 5. The letter states that "both you personally and your firm may consider this letter a 'thirty day demand letter' pursuant to G.L. c. 93A (the Consumer Protection Act)." Mot. to Dismiss, Decl. Stephen P. Hayes, Ex. 5. The letter states that the April 13 notice to vacate, by including a demand for use and occupancy fees, was "a debt collection letter and subject to regulation under the FDCPA and its state analog, G.L. c. 93, s.49 and the regulations thereto." Id. at 1. Attorney Ranney's May 17 letter asserts that "the total demand hereunder is $46,500.00, plus attorney's fees-currently- in the amount of $1,000.00." Id. By letter dated June 15, 2012, Attorney Hayes responded to the May 17, 2012, letter, which stated that "(t)he demands contained in your letter are rejected in full." Pls.' Opp., Ex. B at 2-3.

In the time between Attorney Ranney's May 17 letter and Attorney Hayes' June 15 response, Sovereign Bank filed a summary process eviction action in Nantucket District Court against the O'Connors. Compl. ¶ 56. Filed on June 4, 2012, the eviction action included a demand for $9,600 in use and occupancy fees.

8

Compl. ¶ 58. On June 5, 2013, the eviction case went to trial in Nantucket District Court. The Judge ruled in favor of the O'Connors on possession on the ground that Nantucket had failed to introduce into evidence documents that were statutory prerequisites to foreclosure. Trial Tr. at 166:3-167:7, <u>Sovereign Bank v. O'Connor</u>, No. 1288-SU-0013, (Nantucket District Court June 5, 2013).

On April 19, 2013, Plaintiffs filed the present complaint in the Massachusetts Superior Court for Nantucket County. On June 6, 2013, Defendants removed this case to federal court. Defendants now move to dismiss the complaint in its entirety. (Docket No. 8). The Court held a hearing on the motion to dismiss on September 12, 2013.

## IV. DISCUSSION

### A. Count One: Fair Debt Collection Statute

#### 1. April 13 Letter

Plaintiffs allege that all three defendants violated the Fair Debt Collection Practices Act by demanding $200 per day in use and occupancy payments in their April 13, 2012, letter. This demand, Plaintiffs argue, was simply "made up" and was an "outrageous" attempt to "intimidate the O'Connors into leaving their home without going through the judicial eviction process." Pls.' Opp. at 7-8; Compl. ¶ 50, 52. Defendants argue that the

FDCPA does not apply to demands for anticipated or future payments as they do not constitute "debt" under the statute.

A viable claim for violation of the FDCPA requires that a plaintiff establish three elements: "(1) that she was the object of collection activity arising from consumer debt, (2) defendants are debt collectors as defined by the FDCPA, and (3) defendants engaged in an act or omission prohibited by the FDCPA." Som v. Daniels Law Offices, P.C., 573 F. Supp. 2d 349, 356 (D. Mass 2008). Under the FDCPA, a debt is defined as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692(a)(5) (2012). The First Circuit has held that, although "the FDCPA's definition of debt is broad," it "requires at least the existence or alleged existence of an obligation to pay money" and "does not broadly forbid practices in connection with all payments of money." Arruda v. Sears, Roebuck & Co., 310 F.3d 13, 23 (1st Cir. 2002). Merriam Webster defines debts as "an amount of money that you owe." Online Dictionary, accessed 31 Oct. 2013 <http://www.merriam-webster.com/dictionary/debt>; see also DEBT, Black's Law Dictionary (9th ed. 2009) (defining debt as "a specific sum of money due").

The Notice to Vacate the O'Connors received was dated April 13, 2012, and made clear that the O'Connors would incur liability for use and occupancy fees starting May 1, 2012. Therefore, at the time they received the letter, the O'Connors had no existing obligation to pay Sovereign Bank any such fees. See Udell v. Kansas Counselors, Inc., 313 F. Supp. 2d 1135, 1140-41 (D. Kan. 2004) ("The plain language of the [FDCPA] reveals that it does not prohibit communications regarding future debts. The statute specifically refers to debt that the consumer has *refused* to pay. In order for a consumer to refuse to pay a debt, he or she must of course have been asked to pay the debt.") (emphasis in original); see also Baer v. Harmon Law Offices, P.C., No. 08-30063-MAP, 2009 WL 102698, at *1-2 (D. Mass. Jan. 14, 2009) (holding that a notice to quit's reference to use and occupancy payments did not "fall under the umbrella of the FDCPA" because the notice "ma[de] no reference to any preexisting financial obligation that Defendant sought to enforce" and "ma[de] it clear that the reference was to potential future damages and not to a preexisting debt," noting that "Massachusetts law makes a sharp distinction between damages for use and occupancy and rent."). Accordingly, because the O'Connors were under no obligation to pay Sovereign Bank at the time they received the April 13 letter, the Court finds that the reference to anticipated "use and occupancy" liability does not implicate the FDCPA.

### 2. Eviction Action

The complaint also alleges that the subsequent court action attempting to enforce Defendants' demand for use and occupancy payments was a violation of the FDCPA. Plaintiffs allege that "defendants knowingly misstated the amounts allegedly due on the summary process summons and complaint as a further effort to coerce, intimidate and exert economic pressure on the O'Connors to vacate the premises without judicial process and before any trial." Compl. ¶ 62. Under § 1693(e) of the FDCPA, "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt," including "[t]he false representation of . . . the character, amount, or legal status of any debt". § 1692(e)(2)(A). Further, "[a] debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." § 1692(d).

The restrictions of the FDCPA only apply to those defendants who meet the definition of "debt collector." Under the statute, a debt collector is "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." § 1692(a)(6). In both the April 13 letter and the summary process eviction

action, Sovereign Bank sought payment of use and occupancy fees asserted to be due to itself, not "owed or due to another." Sovereign Bank, therefore, cannot be subject to FDCPA liability as a result of its conduct.

The same cannot be said for Attorney Hayes and Hayes & Hayes, who filed the summary process action in order to obtain payment of funds allegedly due to Sovereign Bank. The Supreme Court has held that an attorney, who "regularly" through litigation tries to collect consumer debts may be a "debt collector" under the FDCPA. See Heintz v. Jenkins, 514 U.S. 291, 299 (1995) (involving a letter sent by a debt collector's attorney to settle a debt collection suit, misrepresenting the amount of the debt). Though Plaintiffs have not alleged any specific facts in their Complaint establishing that Defendant Hayes "regularly" engages in debt collection, Attorney Hayes himself stated in correspondence with Plaintiffs that "Hayes & Hayes, Attorneys at Law, P.C. is acting as a debt collector, pursuant to the federal [FDCPA]" on behalf of Sovereign Bank. Mot. To Dismiss, Decl. Stephen P. Hayes, Ex. 4. Because neither party disputes the authenticity of the letter, this statement suffices to establish Attorney Hayes and Hayes & Hayes as debt collectors for the purposes of the FDCPA.

Where a Defendant is established as a debt collector and is alleged to have engaged in an act or omission prohibited by the

FDCPA, all that remains is for the plaintiff to show "she was the object of collection activity arising from consumer debt." Som, 573 F. Supp. 2d at 356. Not all ordinary court-related documents or lawsuits involving the collection of a debt implicate the FDCPA. Heinz, 514 U.S. at 296. However, improper conduct by attorneys during litigation can be an improper harassing tactic under § 1692(d). See, e.g., Harrington v. CACV of Colorado, LLC, 508 F. Supp. 2d 128, 135 (D. Mass. 2007) (involving an improper motion for default)(citing Argentieri v. Fisher Landscapes, Inc., 15 F. Supp. 2d 55 (D. Mass. 1998)). Such conduct may also violate § 1693(e) if it involves misleading representations.

The Supreme Court in Heintz held that the FDCPA "applies to the litigating activities of lawyers," Heintz, 514 U.S. at 294. Applying that broad proposition, several courts of appeals have affirmed the applicability of the FDCPA to particular activities and documents involved in litigation, including: written discovery documents, see Sayyed v. Wolpoff & Abramson, 485 F.3d 226, 228, 230-32 (4th Cir. 2007); service of requests for admission, see McCollough v. Johnson, Rodenburg & Lauinger LLP, 637 F.3d 939, 952 (9th Cir. 2011); and complaints served directly upon consumers, see Donohue v. Quick Collect, Inc., 952 F.3d 1027, 1031-32 (9th Cir. 2010). Further, the act of litigating in itself may in some instances form the basis of an FDCPA claim. See LeBlanc v. Unifund CCR Partners, 601 F.3d 1185, 1193 n. 15

(11th Cir. 2010) ("the initiation of legal proceedings by a creditor can constitute a debt collection activity") (citing Heintz, 514 U.S. at 294); see also Sayyed, 485 F.3d at 230 ("The statutory text makes clear that there is no blanket common law litigation immunity from the requirements of the FDCPA.") Thus, while the FDCPA has "the apparent objective of preserving creditors' judicial remedies," Heintz, 514 U.S. at 296, courts balance that purpose against the need to protect consumers from abusive and misleading debt collection practices, even when such practices take the form of state court litigation.

District courts have reached varying conclusions on whether eviction actions come within the scope of the FDCPA. Several have held that, at least in some instances, an eviction action can constitute collection activity sufficient to form the basis of an FDCPA claim. See, e.g., Sanz v. Fernandez, 633 F. Supp. 2d 1356, 1363 (S.D. Fl. 2009) (holding that plaintiff stated a valid FDCPA claim against non-lawyers who filed an eviction complaint against tenant with a demand for attorneys fees and monetary damages); see also Nelson v. American Power and Light, No. 2:08-cv-549, 2010 WL 3219498, at *7 (S.D. Ohio Aug. 12, 2010) (holding that plaintiff stated a claim for relief under the FDCPA against utility company who filed an eviction action, in landlord's leasing agent's name, seeking past due electric bill payments). Other courts have been more hesitant to bring eviction actions

within the ambit of the FDCPA: In <u>Cook v. Hamrick</u>, 278 F. Supp. 2d 1202 (D. Colo. 2003), the court expressed skepticism that a lease between a landlord and tenant constituted a "consumer transaction" under the FDCPA, and rejected the theory that a claim for attorney's fees in the subsequent eviction action was a debt "arising out of" the lease. <u>Id.</u> at 1204. Meanwhile, in <u>Bond v. U.S. Bank Nat'l Assoc.</u>, No. 09-14541, 2010 WL 1265852, at *5 (E.D. Mich. Mar. 29, 2010), the court held that a summary proceeding action against the plaintiff did not constitute debt collection because the bank sought only possession, and no monetary damages relating to the property. <u>Id</u>

The law remains unsettled in this area, and courts' decisions regarding the applicability of the FDCPA to eviction actions have thus far been especially fact-sensitive. A synthesis of the existing cases that address the question suggests that an eviction action can implicate the FDCPA, particularly where the eviction action includes some demand for payment tied to the property at issue (e.g. a utility bill, or damages for unpaid rent). Here, Defendant Hayes sought to collect $9,600 in use and occupancy fees for Sovereign Bank by making an allegedly outrageous demand for payment in the post-foreclosure eviction complaint served upon Plaintiffs. Accordingly, Plaintiffs have sufficiently alleged that Defendant Hayes and Hayes & Hayes

violated the FDCPA by filing the eviction action and misstating the owed amount of use and occupancy fees in its demand.

As to Sovereign Bank, Count One is dismissed in its entirety. As to Attorney Hayes and Hayes & Hayes, Count One is dismissed with respect to the April 13 letter, but not with respect to the demand for use and occupancy fees in the post-foreclosure eviction litigation.

### 2.    Mass. Gen. Laws ch. 93, § 49

The state counterpart to the federal Fair Debt Collection Practices Act, Mass. Gen. Laws ch. 93, § 49, titled "Debt collection in an unfair, deceptive or unreasonable manner", provides generally that "[n]o one who is a creditor or an attorney for a creditor, or an assignee of a creditor, of a natural person present or residing in Massachusetts who has incurred a debt primarily for personal, family or household purposes shall collect or attempt to collect such debt in an unfair, deceptive or unreasonable manner." Mass. Gen. Laws ch. 93, § 49.[3] Plaintiffs fail to assert any right to relief under the Massachusetts debt collection statute as § 49 itself provides no private right of action. Kassner v. Chase Home Fin., LLC, CIV.A. 11-10643-RWZ, 2012 WL 260392, at *9 (D. Mass. Jan. 27, 2012) (noting that plaintiffs' alleged violations of

_____

[3] Despite both parties' repetitive citation to the "Massachusetts Fair Debt Collection Practices Act", there is no statute with that name under Massachusetts law.

Massachusetts' debt collection statute under Mass. Gen. Laws ch. 93, § 49 were only cognizable insofar as they served a basis for derivative liability under Mass. Gen. Laws. Ch. 93A since the Massachusetts debt collection statute "do[es] not provide private rights of action"). Rather, Plaintiffs' claims under § 49 must be dismissed except to the extent they form the basis for liability under § 93A, discussed in Section C below.

**B.    Count Three: RESPA Violation**

Plaintiffs allege that Nantucket Bank violated the Real Estate Settlement Procedure Act by failing to respond to their October 7, 2011 letter, which was self-identified as a "qualified written request." In the letter, Plaintiffs' requested, among other things, that the bank provide copies of 30 documents and that the bank respond to ten enumerated categories of questions, which totaled around 140 specific requests for information. Defendants argue that this claim should fail for two reasons. First, Defendants assert that Plaintiffs October 7 letter did not constitute a qualified written request ("QWR")under RESPA. Second, even if the letter did constitute a written request, Defendants argue that their November 1, 2011, acknowledgment of the letter and December 27, 2011, response constituted a sufficient reply that satisfied RESPA's requirements. Plaintiffs dispute that Defendant's response was adequate, arguing that it was deficient in two respects: first, defendants failed to

specifically answer the approximately 140 enumerated questions and second, defendants failed to provide a key for the Plaintiffs to use to interpret their loan payment history information.

### 1.   RESPA Requirements

RESPA requires the servicer of a federally-related mortgage loan to respond to certain borrower inquiries, which the statute terms "qualified written requests." 12 U.S.C. § 2605 (2012). Under RESPA, a qualified written request: "shall be a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that- (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B). Under RESPA's definitions, a servicer is "the person responsible for servicing of a loan (including the person who makes or holds a loan if such person also services the loan)" and the term "servicing" means "any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts described in section 2609 of this title, and making the payments of principal and interest and such other payments with respect to the amounts received from the

borrower as may be required pursuant to the terms of the loan."
§ 2605(i)(2)-(3).

If a borrower's correspondence constitutes a QWR, certain
obligations attach to the servicer's response. First, the
servicer must acknowledge receipt of the QWR within twenty
business days. § 2605(e)(1)(A).[4] Next, the servicer must provide
a more complete response to the borrower within sixty business
days. § 2605(e)(2).

In its response, "the servicer shall–

(A) make appropriate corrections in the account of the
borrower, including the crediting of any late charges
or penalties, and transmit to the borrower a written
notification of such correction (which shall include
the name and telephone number of a representative of
the servicer who can provide assistance to the
borrower);

(B) after conducting an investigation, provide the
borrower with a written explanation or clarification
that includes– (i) to the extent applicable, a
statement of the reasons for which the servicer
believes the account of the borrower is correct as
determined by the servicer; and (ii) the name and
telephone number of an individual employed by, or the
office or department of, the servicer who can provide
assistance to the borrower; or

(C) after conducting an investigation, provide the
borrower with a written explanation or clarification
that includes––(i) information requested by the
borrower or an explanation of why the information
requested is unavailable or cannot be obtained by the

_____

[4] The Dodd-Frank Wall Street Reform and Consumer Protection
Act shortened the amount of time given to mortgage servicers to
respond to borrower inquiries. That change took effect on January
21, 2013. See Pub. L. No. 111-203 § 1463(c), 124 Stat. 1376
(2010).

> servicer; and (ii) the name and telephone number of an
> individual employed by, or the office or department
> of, the servicer who can provide assistance to the
> borrower.

12 U.S.C. § 2605(e)(2)

Failure to comply with RESPA requirements renders the servicer "liable to the borrower for each such failure . . . [i]n the case of any action by an individual, an amount equal to the sum of– (A) any actual damages to the borrower as a result of the failure; and (B) any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $2,000." § 2605(f). To make out a claim under § 2605(e), a plaintiff must allege sufficient facts to "show: (1) that the servicer failed to comply with the statute's [qualified written request] rules; and (2) that the plaintiff incurred 'actual damages' as a consequence of the servicer's failure." Jones v. Bank of New York, CIV.A. 12-11503-RWZ, 2013 WL 3728382, at *5 (D. Mass. July 12, 2013) (citing Okoye v. Bank of New York Mellon, CIV. A. No. 10–11563-DPW, 2011 WL 3269686, at *17 (D.Mass. July 28, 2011)). Further, "[t]o state a claim under RESPA, many courts have read § 2605 to require a showing of pecuniary damages." Williams v. Litton Loan Servicing, CA 10-11866-MLW, 2011 WL 3585528, at *4 (D. Mass. Aug. 15, 2011) (citing Durland v. Fieldstone Mortg. Co., No. 10 CV 125 JLS, 2010 WL 3489324, at *3 (S.D.Cal. Sept.3, 2010)).

### 2. Was the October 7, 2011 Letter a Qualified Written Request?

Defendants argue that the October 7, 2011, letter was so over-broad and burdensome that it failed to qualify as a QWR under RESPA and that consequently, none of the Bank's obligations to respond were triggered upon its receipt. The O'Connors concede that some of the requests in their letter "had no obvious relevance to their loan" but argue that the letter still constituted a QWR since "[m]ost of the requests . . . clearly related to the 'servicing' of the O'Connors' loan under their mortgage with Nantucket Bank." Pls.' Opp. at 12-13.

Under RESPA, in order to constitute a Qualified Written Request, a communication must "include[] a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B). The Seventh and Ninth Circuits have interpreted this scope of this provision liberally, stating that a QWR does not require the use of "any 'magic' words" to constitute a valid request and "an interpretation according to which it did so implicitly would be inconsistent with Congress' intent that the statute serve a broad remedial purpose. Instead, under § 2605(e), a borrower's written inquiry requires a response as long as it (1) reasonably identifies the borrower's name and

account, (2) either states the borrower's 'reasons for the belief
... that the account is in error' or 'provides sufficient detail
to the servicer regarding other information sought by the
borrower,' and (3) seeks 'information relating to the servicing
of [the] loan.' 12 U.S.C. § 2605(e)(1)(A)–(B). <u>Medrano v.
Flagstar Bank, FSB</u>, 704 F.3d 661, 666 (9th Cir. 2012) <u>cert.
denied,</u> 133 S. Ct. 2800 (U.S. 2013) (citing <u>Catalan v. GMAC
Mortgage Corp.</u>, 629 F.3d 676, 687 (7th Cir. 2011) (noting that
"RESPA does not require any magic language before a servicer must
construe a written communication from a borrower as a qualified
written request and respond accordingly.")).

The Ninth Circuit, however, made clear that: "the third of
those requirements—that the letter must request information
relating to servicing—ensures that the statutory duty to respond
does not arise with respect to *all* inquiries or complaints from
borrowers to servicers. . . . 'Servicing,' so defined [under
RESPA], does not include the transactions and circumstances
surrounding a loan's origination—facts that would be relevant to
a challenge to the validity of an underlying debt or the terms of
a loan agreement. Such events *precede* the servicer's role in
receiving the borrower's payments and making payments to the
borrower's creditors. Perhaps for that reason, Congress drafted
the statute so as not to include those matters." <u>Id.</u> So, while a
the form of the request may be construed somewhat liberally, the

substance of that request must pertain specifically to servicing in order to trigger an obligation to respond under RESPA.

That brings the Court to the question: to what extent does an over-inclusive request for both servicer- and non-servicer-related information constitute a QWR under RESPA? The caselaw on this question is evolving. At least at the district level, many courts have held that even overbroad requests may constitute a valid QWR to the extent that they contain servicer-related questions. See Kassner v. Chase Home Fin., LLC, CIV.A. 11-10643-RWZ, 2012 WL 260392, at *6 (D. Mass. Jan. 27, 2012) (holding that plaintiff had sufficiently alleged a "technical" RESPA violation even though her QWR consisted of "a four-page single spaced letter with 37 separate requests" where "most of the 37 requests [we]re ostensibly not 'servicer related'"); Sovereign Bank v. Sturgis, 863 F. Supp. 2d 75, 104-05 (D. Mass. 2012) (noting that while "a number of the requests that the [plaintiffs] made are unrelated to servicing as defined by the statute ... [o]n the other hand, a number of the requests fit precisely within the ambit defined by the statute" and stating that "[w]hile [the bank] was entitled to ignore the former category of requests, it was obligated to respond to those relating to payments, fees, and the like as described in RESPA."). Even in Menashe v. Bank of New York, which Defendants cite to stand for the opposite proposition, the court held that, despite the fact that requests

were "[b]uried in the [plaintiff] letter's nineteen requests for documents", to the extent that "some requests that may plausibly be construed as seeking information regarding servicing", the court "[could] not say at this time that Plaintiff's . . . letter at least in part, [did] not qualify as a QWR." 850 F. Supp. 2d 1120, 1131-32 (D. Haw. 2012).

Here, Plaintiffs' blitzkrieg approach of lobbing 140 specific requests at the bank far exceeded those at issue in either <u>Kassner</u> (37 requests) or <u>Menashe</u> (19 requests) and raises concerns that counsel sent the grossly over-inclusive letter in bad faith or for dilatory purposes. However, the court need not address whether this is a bona fide QWR because the Bank filed an appropriate response.

### 3.   The Bank's December 27 Response under RESPA

Plaintiffs do not contest the timeliness of Defendants' response to their request. The Bank acknowledged receipt of the October 7 letter on November 1, 2011, and followed up on December 27, 2011, with a more comprehensive response within the statutory time-frame under § 2605(e)(2). Rather, Plaintiffs contend that the Bank's December 27 response was deficient because it did not specifically respond to the 30 requests for documents and approximately 140 questions related to the loan, and Defendants did not include a key to interpret Plaintiffs' loan history.

In a similar case, <u>Kassner</u>, 2012 WL 260392, at *6, the court
found a violation of RESPA where plaintiffs sent their loan
servicer a mixed request for information and the Bank responded
with a copy of the executed note and several form statements.[7]
The Court found that, although many of the non-servicer related
questions did not merit a response, "plaintiff's request for a
copy of the loan's payment history clearly [did] relate to the
servicing of the loan" and the bank "did not include that history
in its May 7, 2010, response to the QWR." <u>Id.</u> at *6-7. The court
went on to describe how the bank "also failed to provide the
contact information of an individual employed by the servicer who
[could] provide further assistance to plaintiff as required by
RESPA." <u>Id.</u> Given these "technical" violations, the Court found
that the Plaintiffs' had made out a viable claim under RESPA. <u>Id.</u>

This case is distinguishable from <u>Kassner</u>. Here, not only
did the Bank provide Plaintiffs' loan history and a contact
person at the Bank, the Bank also included a copy of the Note and
Mortgage, copies of loan modification documents the plaintiffs
executed, and a recent appraisal of the Property. Further, the
Bank offered additional information if the Plaintiffs clarified
their request, stating explicitly in the cover letter: "If you

---

[7] Specifically, the bank included: an ARM Mortgage Loan
Disclosure Statement, Notice of the Right to Cancel statements,
Truth in Lending Disclosure Statement and HUD 1-Settlement
Statement. <u>Kassner</u>, 2012 WL 260392, at *6.

provide us with a more narrow and specific request, we will consider your request and respond accordingly." Mot. Dismiss, Tanner-Butler Decl. Ex. 3. It is true that the bank did not provide a key to interpret the loan history, and it was not self explanatory.  Nonetheless, Plaintiffs have not alleged that they followed up with the bank after receiving the December 27 letter to get a better explanation, nor have they asserted that they made any good faith effort to narrow their request. In fact, at oral argument this Court requested that Plaintiffs narrow down for the court which specific questions they felt entitled them to a response. Plaintiffs' counsel has failed to do so.

Given the Bank's response to an overly broad information request, the Court finds that the Bank complied with its requirements under RESPA. Therefore, the Court hereby dismisses Count Three with prejudice.

### C.    Count Two: Massachusetts General Law Chapter 93A

The O'Connors assert that defendants Nantucket Bank, Hayes & Hayes, and Attorney Hayes, individually or collectively, violated Massachusetts General Law Chapter 93A for allegedly engaging in unlawful debt collection. Compl. ¶ 82-85. Chapter 93A protects consumers from "unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass. Gen. Laws ch. 93A, § 2(a). To succeed on a Chapter 93A claim, a plaintiff must plead that the defendant's conduct was unfair or deceptive and that the

27

defendant's conduct occurred in trade or commerce. See Klairmont v. Gainsboro Rest. Inc., 465 Mass. 165, 174 (2013) ("[A] violation of a law or regulation . . . will be a violation of c. 93A, § 2(a) *only* if the conduct leading to the violation is *both* unfair or deceptive *and* occurs in trade or commerce.") (emphasis added). Additionally, "as a special element" of a Chapter 93A cause of action, the plaintiff's complaint must allege that the plaintiff sent a demand letter to the defendant.[8] Entrialgo v. Twin City Dodge, Inc., 368 Mass. 812, 812 (1975). Even where a violation of another statute constitutes a *per se* violation of Ch. 93A, the demand letter requirement must be met. See McKenna v. Wells Fargo Bank, N.A., 693 F.3d 207, 218 (1st Cir. 2012) (holding that under Massachusetts law, mortgagor's failure to submit demand letter to mortgagee 30 days prior to filing action precluded mortgagor's claims alleging mortgagee engaged in unfair or deceptive acts or practices because even if mortgagee's acts were per se unfair or deceptive acts or practices, "no such exception for '*per se*' violations is supported by Massachusetts law.").

---

[8] Mass. Gen. Laws ch. 93A, § 9(3) provides that "[a]t least thirty days prior to the filing of any such action, a written demand for relief, identifying the claimant and reasonably describing the unfair or deceptive act or practice relied upon and the injury suffered, shall be mailed or delivered to any prospective respondent."

As to Nantucket Bank, the O'Connors pleaded both that the bank engaged in unfair or deceptive conduct and that the bank engaged in commerce. Compl. ¶ 9, 31, 52, 54. Plaintiffs failed, however, to specifically allege that they sent a demand letter to Nantucket Bank. See Epps v. Bank of America, N.A., No. 12-1282, 2013 WL 3120282, at *6-7 (Mass. Super. Ct. June 14, 2013) (dismissing plaintiff's Chapter 93A claim where both the plaintiff's complaint and provided demand letter failed to indicate the plaintiff "sent any [] demand letter to [two of the defendants] or that either of these defendants were otherwise put on notice of a c. 93A action against them."); cf. Kirtz v. Wells Fargo Bank N.A., No. 12-10690-DJC, 2012 WL 5989705, at *11 (D. Mass. Nov. 29, 2012) (granting plaintiff leave to amend her complaint where the plaintiff "d[id] not specifically allege that she sent the statutory notification" but rather alleged generally that "she ha[d] performed all necessary conditions precedent to th[e] action within the purvue of Mass. Gen. L. Ch. 93A."). Given that the O'Connors failed to allege that they provided Nantucket Bank with the required demand letter, the Chapter 93A claim against Nantucket Bank is dismissed.

As to the attorney defendants, Attorney Hayes and Hayes & Hayes, Plaintiffs satisfied Chapter 93A's demand letter requirement. Compl. ¶ 52, 54. However, the O'Connors failed to plead that either Hayes & Hayes or Attorney Hayes was engaged in

trade or commerce, a required element of a Chapter 93A claim. See Klairmont, 465 Mass. at 174 (requiring Chapter 93A claims to allege defendant's conduct was unfair or deceptive and occurred in trade or commerce); see also McDermott v. Marcus, Errico, Emmer & Brooks, P.C., No. 09-10159-MBB, 2013 WL 4539071, at *5-7 (D. Mass. Aug. 26, 2013) (holding that a defendant-attorney was not "liable under chapter 93A given the absence of the required trade or commerce under section 2(a)"). Generally, "the proper party to assert a [chapter] 93A claim against an attorney is a client or someone acting on a client's behalf." Tetrault v. Mahoney, Hawkes & Goldings, 425 Mass. 456, 462 (1997).

When a non-client asserts a chapter 93A claim against an attorney, the attorney must have been acting in a business context vis-a-vis plaintiffs. McDermott, 2013 WL 4539071, at *5. See also Akar v. Federal National Mortgage Association, 843 F.Supp.2d 154, 170 (D.Mass. 2012) (holding that "Chapter 93A claims can be brought against an attorney or a law firm, but only when the attorney or law firm is acting in a business context vis-a-vis the plaintiffs.") (internal citations and quotations omitted). Several courts have held that an attorney engaged in litigation efforts to collect monies owed to his client is not engaged in trade or commerce as delivered in Chapter 93A. McDermott, 2013 WL 4539071 at *6 (finding that attorney who represented a condominium association did not "inject itself into

the external marketplace in the course of its efforts to collect monies owed to its client," but rather was simply pursuing "a private dispute between volunteer members of a condominium association and a condominium owner who failed to pay assessments and related charges."). See also Akar, 843 F.Supp.2d at 171 (finding trade or commerce element had not been met when the "only contact between the parties was on opposing sides of a dispute involving the foreclosure of [Plaintiff]'s property by [the law firm's client]"). The complaint is devoid of any allegation that Hayes & Hayes or Attorney Hayes engaged in trade or commerce vis-a-vis plaintiff. Therefore, the Chapter 93A claim against Hayes & Hayes and Attorney Hayes is also dismissed.

### IV. ORDER

As to Count One, against Attorney Hayes and Hayes & Hayes, P.C., defendants' Motion to Dismiss is **DENIED** in relation to the post-foreclosure eviction action, and **ALLOWED** in relation to the April 13 letter. As to Sovereign Bank, the Motion to Dismiss is **ALLOWED** in its entirety as to Count One. As to Counts Two and Three, the Court **ALLOWS** the Motion to Dismiss for all defendants.


 /s/ PATTI B. SARIS
PATTI B. SARIS
Chief United States District Judge

31